UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 5:21-cr-009 |
| | ) | |
| BRETT DONAVAN BUSSEY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BRETT BUSSEY'S MOTION TO SUPPRESS
NOVEMBER 16, 2021 SEARCH OF 410 WEST 6th STREET,
TIFTON, GEORGIA, AND COMPUTERS AND
ELECTRONIC DEVICES**

Defendant Brett Bussey files this his Motion to Suppress the November 16, 2021 Search Warrant of 410 West 6th Street, Tifton, Georgia and for computers and electronic devices under Federal Rules of Criminal Procedure 12(b)(3)(C), Rule 41(h), and the Fourth Amendment to the United States Constitution, and shows this Court the following:

## I.      Introduction.

Defendant Brett Bussey formerly worked as an agricultural specialist/H-2A housing inspector for the Georgia Department of Labor, and as an agent to help farmers procure H-2A visas[1] for their seasonal crop workers.

---

[1] An H-2A visa allows the foreign worker to enter the United States and perform paid work for an agricultural employer for a specific period of time.

1

On November 16, 2021, the government obtained a search warrant from a magistrate judge in the Middle District of Georgia for Bussey's residence in Tifton, Georgia, based on the affidavit of United States Department of Labor Special Agent Kelly Linemann. Bussey attaches to this motion the following exhibits related to obtaining a search warrant and the warrant itself:

Exhibit 1: Application for a Warrant

Exhibit 2:   Application Attachments

Exhibit 3: Affidavit in Support of Application

Exhibit 4: Search Warrant

Bussey has moved to suppress evidence obtained from a search warrant directed to Microsoft and from orders authorizing wiretaps of his phone. Like those challenges, the affidavit supporting this warrant application did not establish probable cause, and it contained material misrepresentations and omissions in the information that it provided the

_____

Doc # 3, p. 4. Information about H-2A visas can be found on various government websites. *E.g.*, https://www.farmers.gov/working-with-us/h2a-visa-program. As the U.S. Department of Agriculture's page suggests, farmers can apply for H-2A visas on their own behalf, or they can hire attorneys or agents to obtain an H-2A labor certification. *Id.* (*see* "Costs of the H-2A Visa Program"). As mentioned, Bussey acted as an agent. *See generally* 20 C.F.R. § 655.5, § 655.7. An agent differs from an employer under the regulatory definitions. *See* 20 C.F.R. § 655.5.

Court, especially with regard to information from the underlying documents. Additionally, the warrant does not meet the Fourth Amendment's particularity requirement.

For the reasons below, the Court should suppress all evidence obtained from the search of the Tifton residence, including computer and electronic devices. Because of the material misrepresentations and omissions in the affidavit, the Court should hold a *Franks* hearing on this motion, too.

## II.     The Lack of Particularity in the Warrant.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*

U.S. Const. Amend. IV (emphasis added). Bussey makes two challenges to the particularity of the warrant. *First*, the warrant refers to Attachment A-12 and the affidavit for descriptions of the place to be searched and the items to be seized, but as provided in discovery, the warrant includes no attachments. *Second,* to the extent that the warrant's reference to "See Attached Affidavit" sufficiently incorporates that affidavit and was presented at the time of the search, the warrant still fails to sufficiently particularize the things to be seized.

## A. The warrant does not describe the premises to be searched or things to be seized.

The search warrant contains these statements:

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the <u>Middle District of Georgia, Valdosta Division</u> *(identify the person or describe the property to be searched and give its location):*

See Attachment A-12.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or described the property to be seized)*:

See Attached Affidavit.

Exhibit 4, p. 1 (emphasis in original) The warrant produced in discovery is a two-page document, with no attachments, containing a page entitled "warrant by telephone or other reliable electronic means" and a page entitled "return." Exhibit 4. This warrant is facially invalid.

In *Groh v. Ramirez*, 540 U.S. 551, 554 (2004), the "application particularly described the place to be searched and the contraband [agents] expected to find," but the warrant itself "failed to identify any of the items that [agents] intended to seize." "The warrant did not incorporate by reference the itemized list in the application," but it recited that the issuing magistrate was satisfied that the affidavit established probable cause. *Id.* at

554-55. When agents executed the warrant, they orally described the objects of the search to the house's occupants and provided one of them only with a copy of the warrant. *Id.* at 555. Despite the application's description, the warrant was facially invalid. *Id.* at 557.

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557. *Groh* acknowledged that courts of appeals "have held a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* But the Court did not address this issue since the warrant did not incorporate any other documents by reference, nor did the affidavit or application (which had been placed under seal) accompany the warrant. *Id.*

The government produced electronically in discovery a two-page search warrant; the document, produced under the file name "521mj84 11.16 410 SW.pdf," contains no attachments. Exhibit 4. Attachment A-12 and Attachment B (which is entitled "***Items to be Seized and Searched***") are saved under the file name "521mj84 11.16 410 SW App Attach," a description that indicates that they accompany the application. Exhibit 2. Indeed, the one-page application refers to both Attachment A-12 and Attachment B, and

it is saved as "521mj84 11.16 410 SW App." Exhibit 1. The warrant is facially invalid under *Groh*.

### B. The affidavit does not particularize the things to be searched or seized.

The Fourth Amendment also "protects against 'the use of general warrants as instruments of oppression.'" *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000), *citing Stanford v. Texas*, 379 U.S. 476, 510 (1965). "The requirement that warrants particularly describe the places to be searched or the things to be seized is unconstitutionally overbroad." *Id.* Assuming that the affidavit was both incorporated into the warrant and was served with the warrant, it is overly broad.

The affidavit seeks permission to search records in whatever form they may be found, and then exclusively discusses "data stored on a computer's hard drive or other storage media." Exhibit 3, ¶ 325. The probable cause showing discusses computers, computer equipment, computer files, computer users, computer activities, and a computer system. *Id.* ¶¶ 326-27. The affiant represents that "I know that when an individual uses a computer to email and submit documents electronically to the United States government for the H-2A visa process, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime." *Id.* ¶ 327(f). It defines

"storage medium" as "any physical object upon which computer data can be recorded," like "hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media." *Id*. ¶ 324(c). Attachment B purports to expand the search to "electronic devices, including smart phones [and] cell phones" and defines "computer" to include "mobile phones." Exhibit 2, attachment B ¶¶ 1(m), 3.

The affidavit makes this representation:

> Because several people share some of the Target Locations as a residence, it is possible that some of the Target Locations will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that [sic] it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

Exhibit 3, ¶ 330.

When read in tandem, these paragraphs of the affidavit and Attachment B allow government agents to seize *any* computers, including cell phones, it finds at the Tifton residence; determine if it is "possible the things described in this warrant" could be found on anything seized; and then review that information.

A district court has rejected a similar provision in a proposed search warrant as lacking particularity, overly broad, and against Supreme Court precedent. *See In re: Search of a Single-Family Home*, 2021 WL 3204201

(N.D. Ill. 2021). As in *Single-Family Home*, there is no evidence to support any assertion that people other than Bussey or his co-defendant Facundo who might be found in the Tifton residence would have evidence of a crime on their computers or phones. *Id.* at *4. There is no evidence that cell phones and computers of others contain contraband or evidence of criminal conduct. *Id.* The government's approach also "presumes that the government can search phones unless its agents are satisfied that the phone is not linked to criminal conduct," which is the opposite of the test in *Riley v. California*, 573 U.S. 373 (2014). *Id.* at *6. For the same reasons as in *Single-Family Home*, this warrant lacks particularity, is overly broad, and contravenes *Riley*.

### III.   What the November 16, 2021, Affidavit says about Bussey.

Bussey has challenged the search warrant directed to Microsoft, doc # 637, and the wiretap orders issued in this case. Doc # 651. Like the affidavits submitted in conjunction those matters, Agent Linemann's affidavit here contains many generalized allegations, describes conduct by Bussey that is not illegal, and makes specific allegations that misrepresent or omit facts essential to the issuing magistrate. As with his other motions to suppress, doc # 637, doc # 651, Bussey asks for a *Franks* hearing on this motion.

In the section entitled "Members and Associates of the Patricio TCO, beginning at page 14 of the affidavit, Agent Linemann describes Bussey

generally as a person who submits or files "fraudulent [ETA 9142] Petitions" or is an "associate" of various co-defendants and Target Subjects. Exhibit 3 at ¶¶ 43, 44, 45, 46, 47, 50, 51, 52, 54, 57, 60, 68. In ¶ 50, which introduces Bussey, the affidavit identifies those "associates" as "the Rojas family, Target Subject I.S.,[2] and Target Subject D.G."

At page 25, the affidavit turns to Target Locations. Target Location 12 is Bussey's residence, which the affidavit contends that Bussey "use[s]. . . to file fraudulent Petitions to bring foreign workers into the United States under the H-2A visa program." Exhibit 3 ¶70(l). Target Locations 9 and 10 are, respectively, identified as the residence and an address used by Juana Ibarro Carillo. *Id.* ¶ 70(i-j)

## A. Target Locations 9 and 10.

In the discussion related to Target Locations 9 and 10, which begins on page 82, Agent Linemann represents that Carillo "controls fraudulent Petitions filed by other members of the Patricio TCO in nominee names on her behalf." Exhibit 3 ¶ 197.

The affidavit states that on "Bussey's intercepted line, agents intercepted a number of pertinent calls between Defendant Carillo and

---

[2] Bussey discussed I.S. in a prior motion, doc # 651, p 13. He relies on and incorporates by reference that discussion here.

Defendant Bussey discussing that Bussey filed fraudulent Petitions for Defendant Carillo," for which Bussey received funds. *Id.* ¶ 198. According to the affidavit, intercepted calls in 2019 and 2020 showed that Carillo and Bussey "were working together to bring in workers using the H2A visa program for a farmer in Tennessee" to "harvest marijuana but . . . would claim they were harvesting tomatoes on the Petitions." *Id.* ¶ 199. In 2020, Bussey filed two petitions for a farmer in Tennessee to harvest tomatoes, but the United States did not issue H-2A visas. *Id.* The affidavit did not identify these petitions.

The affidavit then claims that Carillo and his son paid Bussey a total of $2,300 in Cash App transactions over two weeks in January and February 2021, amounts that "are consistent with payments Defendant Bussey would obtain from a farm labor contractor prior to submitted documents to request H-2A workers." *Id.* ¶200. On March 3, 2021, Bussey filed a petition on behalf of J.R. for 68 workers. *Id.* ¶ 201. The remaining seven paragraphs of this recitation do not mention Bussey except for the allegation that this J.R. petition "is fraudulent because Defendant Carrillo paid Defendant Bussey to file [this] Petition . . . in the name of [J.R.], a nominee name. . ." *Id.* ¶ 207.

To the extent that these allegations rely on information contained on a wiretap of Bussey's phone, Bussey has moved to suppress all evidence

obtained from the wiretap. Doc # 651. If the Court grants that motion, it would remove these allegations from the probable cause analysis. *See* 18 U.S.C. §2518(10)(a); *Wong Sun v. United States*, 371 U.S. 471 (1963).

Beyond the wiretap evidence, Agent Linemann discloses that Bussey obtained money from Carillo, a farm labor contractor, who is consistent with submitting H-2A documents. Exhibit 3, ¶ 200. While the affidavit talks about the H-2A approval process generally, Exhibit 3, ¶¶ 9-23, it does not discuss the role of an agent, which is what Bussey was. In a recitation that spans 15 paragraphs and almost five pages (pages 4-8), the affidavit relays only three pieces of information about an agent:

- An employer and agent (if applicable) must sign an ETA 9142 "under penalties of perjury" before it is forwarded on to DHS for final approval. (¶ 17)

- After DHS certifies the ETA 9142, the employer must submit a DHS Form I-29 for final adjudication, and both the employer and agent (if applicable) must sign "under penalties of perjury." (¶ 18)

- Employers, agents, attorneys, or recruiters cannot collect money from foreign nationals for fees associated with the program. (¶ 21)

What the affidavit does not disclose is the regulatory scheme that treats agents differently from employers and labor contractors. An agent is "authorized to act on behalf of an employer for temporary agricultural labor certification purposes." 20 C.F.R. §655.103(b). But an employer is one who

"[h]as an employment relationship (such as the ability to hire, pay, fire, supervise, or otherwise control the work of employee) with respect to an H-2A worker." *Id*. An employer also encompasses any "person on whose behalf an *Application for Temporary Employment Certification"* is filed. *Id*. An H-2A labor contractor "meets this definition of employer" but is not a "fixed-site employer [or] an agricultural association," and "who recruits, solicits, hires, employs, furnishes, houses, or transports any worker. . ." *Id*. An H-2A labor contractor must "comply with all the assurances, guarantees, and other requirements contained" in the regulations. 20 C.F.R. § 655.132. Agents, on the other hand, must provide a copy of the agency agreement when filing an application and (if required by statute) identify "the specific farm labor contracting activities he is authorized to perform." 20 C.F.R. § 655.133.[3]

The certifications made by agents and employers differ, as will be discussed with respect to the allegations on Target Location 12. Briefly, the labor contractor certifies under penalty of perjury that the substance of the petition is correct. The agent (Bussey) certifies that he prepared it on behalf of the labor contractor, who reviewed the petition and informed him that it

---

[3] In the motion to suppress evidence obtained from Microsoft, Bussey inadvertently identified the regulatory sections pertaining to non-agricultural workers. Doc # 637, p. 1 & n. 1, p. 10. The cites in this motion refer to the regulations pertaining to agricultural workers.

was correct. That would have been the case for the unidentified Tennessee farmer petitions and for the March 3, 2021, J.R. petition. It is telling that the affidavit discusses the J.R. petition at length, ¶¶ 201-06, averring only that Bussey got paid to file a petition. ¶ 207

That is what agents do, but despite an extensive discussion of the ETA 9142 filing process, Agent Linemann never explains their role, or the respective certifications made by agents and employers.

### B. Target Location 12.

At page 93, the affidavit turns to Bussey specifically. Exhibit 3, ¶¶ 217-228. As in the affidavit submitted with respect to the Microsoft search warrant, Agent Linemann's affidavit contends that Bussey "submitted at least eight Petitions with fraudulent" information and that the Department of State "has refused at least 833 visas associated with Brett Bussey's Petitions because of inaccurate or incomplete information." *Id.* ¶ 222. As discussed in Bussey's Microsoft challenge, refusal of visas is what happens if one submits inaccurate or incomplete petitions. Doc # 637, p. 10-11, 13. That's what the form says. Since this affidavit makes the same "833 petitions" averment as the Microsoft affidavit, Bussey relies on the argument in that motion and incorporates it here by reference.

The affidavit relies on an August 19, 2019, meeting between Bussey and the confidential source. Exhibit 3, ¶ 223. In his motion to suppress the wiretap order, Bussey described the CS's criminal history and the history of their interactions, which includes the CS's getting him drunk with the approval of supervising agents. Doc # 651, p. 11-19. Bussey relies on the argument in that motion and incorporates it here by reference.

Like the Microsoft affidavit, this affidavit discusses only one "fraudulent" petition: IOE8317835125. Exhibit 3, ¶¶ 224-28. Bussey attaches that petition as Exhibit 5. According to the affidavit, Bussey – using an IP address tied to his home – submitted paperwork on J.R.'s behalf seeking 80 workers to harvest peanuts and in a peanut mill or plant onions, and that 73 workers entered the United States under this petition. *Id.* ¶¶ 224-25. But interviews of the owner of J.D.P. & G. indicate that the workers never came, that J.R. would not return his calls, and that he asked his long-time friend Bussey about the status of those workers. *Id.* ¶ 226. Bussey gave several explanations until he quit answering the owner's calls. *Id.* When agents talked to the owner of the designated hotel for housing, the hotel owner relayed his conversations with *J.R.* – not Bussey – and told agents that he would "discuss the delay again with J.R." *Id.* ¶ 227. This led Agent Linemann to conclude that the petition "filed by Defendant Bussey is fraudulent

because the workers did not stay or work at the approved locations." *Id.* ¶ 228.

An analysis of the petition itself, as well as other documents that the government disclosed and did not discuss in the affidavit, demonstrates the misrepresentations and omissions that went into this portion of the affidavit. *First*, if an agent submits an ETA 9142 electronically, he must provide a printed ETA 9142 "signed by both the United States employer and their agent/preparer (if application) under penalties of perjury" before the form "can be forwarded onto DHS for final approval." *Id.* ¶ 17. Here, Bussey submitted an electronic ETA 9142 on August 11, 2021, and mailed a written form ETA 9142 on September 1, 2021. *Id.* ¶ 224. The certification that Bussey, as agent, signed on this petition is as follows:

> By my signature, I certify, swear, or affirm, under penalty of perjury, that I prepared this petition on behalf of, at the request of, and with the express consent of the petitioner or authorized signatory. The petitioner has reviewed this completed petition as prepared by me and informed me that all of the information in the form and in the supporting documents is complete, true, and correct.

Exhibit 5 at 8.

The affidavit does not disclose that between the electronic and paper filings, the Department of Labor received a letter dated August 23, 2021, from J.R. Bussey attaches that letter as Exhibit 6.

J.R.'s August 23, 2021, letter responds to a Notice of Deficiency received from the DOL. Exhibit 7 at 1. The government produced the underlying Notice of Deficiency in discovery.[4] By regulation, if a Form 9142 is "incomplete, contains errors or inaccuracies, or does not meet the requirements set forth in this subpart," the agency will notify an employer within 7 business days of receipt and inform the employer of deficiencies via a Notice of Deficiency. *See* 20 C.F.R. §655.141. There is nothing unusual or illegal about this process; it is what the regulations provide.

In any event, J.R.'s letter identifies the deficiency and allows a modification as follows:

### Deficiency #1: Agricultural Labor or Services

As it is unclear work will take place on a farm and at least 50% of the crops being processed were cultivated by the fixed-site grower, the job opportunity does not appear to satisfy the definition of agricultural labor in 26 U.S.C. §3121(g). The employer has therefore failed to establish its application as eligible for the H-2A program under the IRC definition of agricultural labor.

### Modification #1:

The employer grants permission to Chicago NPC[5] to remove Jeff Davis Peanut & Grain from its application. . .

---

[4] On August 11, 2021, DOL form was digitally signed by J.R. only; Bussey's name is not on it. Bussey attaches this DOL form as Exhibit 7; J.R.'s digital signature appears on page 8.

[5] "Chicago NPC" is the Chicago National Processing Center – the recipient of J.R.'s letter. *See* Exhibit 7 at 1.

*Id.* J.R.'s letter provides additional information about onion growers. *Id.*
J.R.'s letter apparently resulted in certification by the DOL on August 30,
2021. Exhibit 6 at 18. In conformity with this exchange, the written copy of
the ETA 9142 mailed on September 1, 2021, the petition discusses work for
H-2A laborers only with respect to onions. *Id.* at 6, 11.

In other words: J.D.P. & G. – the subject of ¶ 226 of the affidavit – had
been removed at the *DOL's* direction after the electronic submission and
before the written one. The affidavit says that the electronic application
requested 80 workers "to work harvesting peanuts and in a peanut mill," but
the "paperwork indicated that at R.F. and M.F. the requested workers would
be planting onions and not peanuts." *Id.* ¶ 224 There is nothing nefarious
about this change, especially since it was a change *made by J.R. at the DOL's
direction*. Agent Linemann does not disclose this in the affidavit.[6]

Nonetheless, Agent Linemann concludes that that petition was
"fraudulent" because "workers did not stay or work at the approved
locations." ¶ 228. Workers did not "work at the approved locations" (i.e., the

---

[6] Agent Linemann also represents that a hotel manager told agents that J.R.
reserved rooms and had not produced the guests because "the workers were
running late" due to processing issues. *Id.* ¶ 227 Bussey is not mentioned at
all in this paragraph; the only conversations occurred between J.R. and the
hotel manager.

peanut mill) because the DOL said they couldn't. If they "did not stay" at "approved locations," even the affidavit places that lapse solely on J.R.

### C. No Probable Cause.

When faced with a warrant application, the Court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Affidavits must provide a judge "with a substantial basis for determining the existence of probable cause," and "wholly conclusory statement[s]" are not enough. *Id.* at 239. A judge's approval of a warrant "cannot be a mere ratification of the bare conclusions of others." *Id.*[7]

The affidavit contains bare conclusions that Bussey is part of a criminal conspiracy. Bussey is an agent who shepherds paperwork through a government approval process. Although the affidavit twice stresses that agents sign petitions under penalty of perjury, it never discusses what an agent does or how the certification under penalty of perjury reflects that

---

[7] Components of this affidavit have been challenged in prior suppression motions, doc # 637, 651, and Bussey challenges those parts on the same basis here.

curtailed role. An employer provides – and certifies that it provides – all of the substantive information in a petition. By regulation, the employer is responsible for all care and protection extended to H-2A workers.

Bussey is an agent, which limits his certification to representations that he showed the employer the petition and the *employer* informed him that the information in that petition was true and correct. By regulation, Bussey is charged with submitting paperwork to show his authority to file a petition for an employer.

The affidavit represents that Bussey got paid to file a petition for Carrillo, but beyond Bussey's filing it as an agent for $2300, it does not address any criminal behavior by Bussey. The affidavit also represents that Bussey helped J.R. file a petition for workers that did not work at a peanut mill or stay at a hotel. The reason why the workers did not work at the peanut mill was because the DOL – in the time between the electronic and paper applications – told J.R. that they could not. The agent did not address any of this in the affidavit.

This motion extensively discusses what this affidavit omitted and misrepresented when it sought a search warrant of Bussey's home. Those misrepresentations and omissions warrant a *Franks* hearing. *See generally Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)(requiring an evidentiary

hearing when a defendant makes a substantial preliminary showing that statements or omissions in an affidavit are deliberately false or made with a reckless disregard for the truth, and the misrepresentations or omissions were necessary to the finding of probable cause). Adding what was omitted and excising what was false renders this affidavit without probable cause to support a search.

"Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false, except for his reckless disregard of the truth" under *Franks*. *United States v. Leon*, 468 U.S. 897, 923 (1984).

WHEREFORE, Mr. Bussey respectfully requests that based on all the reasons and authorities cited above, the Court hold a *Franks* hearing and suppress the evidence obtained from this warrant.

This the 14th day of August, 2023.

WITHERS LAW FIRM PC

*/s/Thomas A. Withers, Esq.*
Attorney Bar Number: 772250
Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: Twithers@gwllawfirm.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 14th day of August, 2023.

WITHERS LAW FIRM PC

<u>/s/Thomas A. Withers, Esq.</u>
Attorney Bar Number: 772250
Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: Twithers@gwllawfirm.com