IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRETT DONOVAN BUSSEY,<br><br>Defendant. | CASE NO.: 5:21-cr-9 |

**O R D E R**

Defendant Brett Bussey filed a "Motion for Identification of the Specific Documents Which the Government Expects to Introduce in Its Case-in-Chief at Trial." Doc. 549. All Defendants joined Defendant Bussey's Motion during a telephonic status conference.[1] Doc. 568. This matter is fully briefed. Docs. 557, 565. I held a hearing on this Motion on August 16, 2023. Doc. 711. Defendants' counsel and counsel for the Government appeared at the hearing, and the parties provided additional argument and evidence. Id.; Docs. 712, 713. These matters are now ripe for consideration.

After consideration of the entire record, including the parties' written submissions and oral arguments, the Court **GRANTS in part** and **DENIES in part** Defendant Bussey's Motion. For the reasons set forth below, the Court denies Defendants' request for the Court to compel the Government to identify its case-in-chief evidence at this time. However, considering the complexities of this case and the discovery materials, it is appropriate that the Government identify its case-in-chief evidence a reasonable period of time before trial. Therefore, the Court

---

[1]  Defendants King, McGauley, Luis Alberto Martinez, Diaz, and Castro have since withdrawn their support for the Motion because they have changed their pleas to "guilty" pursuant to plea agreements or intend to do so. See Doc. 601 at 1 n.1; Dkt. entry dated July 25, 2023.

**ORDERS** the Government to identify the evidence it intends to offer, use, or refer to in its case-in-chief no later than 30 days before the start of trial.[2] If the Government fails to meet its commitments to assist Defendants, discussed below, the Court will reassess the need for earlier identification.

## BACKGROUND

The Government has produced an enormous volume of electronic data in this case. Defendants argue they cannot adequately defend this case unless the Government identifies the evidence it intends to use in its case-in-chief well in advance of trial. The Government says it has done all that is required, and more, and it should not be ordered to do more. A history of the litigation, and specifically the discovery process, provides helpful context for this dispute.

### I.     Relevant Procedural History

On October 5, 2021, a federal grand jury indicted 23 Defendants on felony charges. Doc. 3. The Indictment contains 54 counts, including charges for mail fraud, conspiracy to commit mail fraud, conspiracy to engage in forced labor, labor trafficking, money laundering conspiracy, and witness tampering. Id. The Government alleges Defendants were part of a transnational criminal organization that fraudulently used H-2A visas to smuggle foreign nationals into the United States. The Government alleges the organization brought these individuals to this country as agricultural workers, but then it exploited the foreign workers and laundered illegal proceeds. Id.

The Government has produced a huge volume of discovery materials—at least 16 terabytes of data—over the past two years. At Defendants' initial appearances in November

---

[2]  This deadline may be modified by the presiding District Judge at the pretrial conference or in the trial management order.

2

2021 through January 2022, the Government described the massive scope and volume of information, explaining it would produce discovery materials on a rolling basis. See Docs. 33, 60, 61, 244, 267. As a result, most Defendants asked for additional time to prepare and file pretrial motions. The Court initially set May 17, 2022 as the pretrial motions deadline but moved it to July 5, 2022 on Defendants' request. Docs. 152, 270.

In April 2022—nearly six months after most Defendants appeared in the case—the Government produced its first round of discovery materials. See Doc. 424. The Government provided an itemized discovery index related to that production. The index alone was 3,617 pages. In June 2022, the Government asked the Court to extend the pretrial motions deadline. Id. The Government explained it still possessed a large volume of materials that had not yet been produced. The Government had obtained these materials when it executed numerous search warrants months earlier, in November 2021.[3] The Government seized more than 100 boxes of documents and more than 150 electronic devices during those searches. Id. at 2. The Government stated it would produce the materials but did not say when. Id. The Court granted the Government's request for an extension, noting the extraordinary nature of this extension request and the slow, protracted production of discovery materials. Doc. 429.

In October 2022, the parties filed another motion to extend the pretrial motions deadline. Doc. 461. The Government explained it had produced 15 terabytes of electronic data between April 8, 2022 and October 10, 2022. Id. at 2–3. At a status conference in November 2022, the Government explained it intended to produce even more discovery materials, including forensic images of seized devices and English translations of certain interview transcripts. Doc. 485. The

---

[3] In November 2021, the Government obtained numerous search warrants related to this case. Law enforcement officers executed those warrants in conjunction with a "round up" of Defendants (i.e., the mass arrest of those charged in this case).

Court granted another six-month extension of the pretrial motions deadline, setting May 9, 2023 as the new deadline.  Doc. 486.

At a status conference in January 2023, the Government announced it had translated some interview transcripts, but had not yet produced them, and it had not yet produced 28 digital images because of password protection.  In February 2023, the Court appointed Mr. Russell M. Aoki to serve as Defendants' coordinating discovery attorney.  Doc. 540.  Since his appointment, Mr. Aoki has assisted Defendants with managing, processing, and organizing discovery materials and has communicated directly with the Government regarding ongoing cooperation efforts.

Defendant Bussey filed this Motion for Identification on March 10, 2023.  Doc. 549.  All Defendants joined Defendant Bussey's Motion during a status conference on April 28, 2023.  At the conference, the parties indicated discovery efforts were ongoing.  On June 2, 2023, the Court held another status conference.  Doc. 597.  At that June 2, 2023 conference, the parties explained Mr. Aoki was in the process of loading all discovery materials into a review database so that Defendants could more effectively review the materials, but the process would not be complete for several weeks.  The parties also informed the Court the review database in question had been hacked, meaning that unknown third parties may have gained access to some of the discovery materials.[4]  The parties then filed a status report, per the Court's instruction, with proposed dates in August 2023 for a hearing on Defendant Bussey's Motion for Identification.  Doc. 601.

On August 16, 2023, the Court conducted a hearing on Defendant Bussey's Motion.  At the hearing, counsel for Mr. Bussey and for other Defendants presented argument.  Mr. Aoki

---

[4]    The hacking incident occurred after Mr. Aoki uploaded discovery materials for this case to the system.  As a result, Mr. Aoki was unable to upload and process data in the Casepoint system for several weeks, which delayed his work.  The hacking incident has been now resolved.  There is no indication the hacking incident will impact the progress of this case in any other way.

testified by video.  Counsel for the Government presented argument and made a presentation regarding its efforts to assist Defendants, including the creation and operation of an electronic discovery review platform.

## II.     Discovery Efforts

The preceding section lays out the relevant procedural history but does not fully describe the parties' discovery efforts, which have largely occurred outside of the Court's purview.  The parties generally agree about what has transpired during discovery but disagree about the consequences of those circumstances.  More detail about the parties' efforts is provided here.

### A.     Scope and Volume of the Government's Production

As of the date of this order, the Government has produced more than 16 terabytes of data.  This volume can be divided into two categories: (1) data obtained from forensic images of seized computers, thumb drives, and cell phones; and (2) all other data.  The first category consists of more than 15 terabytes of data, and it includes 75 forensic images of computer hard drives and thumb drives and 97 forensic images of mobile devices.  The second category consists of 738 gigabytes, and is made up of individual records, including documents, wiretaps, photos, videos, investigative reports, grand jury material, and financial records.[5]  The Government produced most of this material by November 2022 and completed production of the remaining materials by

---

[5]     The record is unclear about the precise makeup of the 738 gigabytes.  At the August 16, 2023 hearing, counsel for the Government suggested this category of data consisted of 72,000 "individual records."  The Government represented these 72,000 records were, in turn, made up of nearly 600,000 individual pages.  However, Mr. Aoki testified that the wiretap data alone included approximately 1,700,000 individual files, and that many of these files are in so-called container files (e.g., Zip files) and those container files hold a hodgepodge of data.  Mr. Aoki testified that in his extensive experience working in this area he had never seen wiretap data produced in such a difficult to use format.  Mr. Aoki also testified there are another 25,000 to 30,000 bank records with thousands of handwritten checks.  Regardless, even considering the Government's more conservative estimate, there are hundreds of thousands of individual pages in this portion of the discovery materials, and this portion represents less than one terabyte of data out of the total 16 terabytes produced.

February 2023.  Doc. 549 at 3.  The Government has not identified any other discovery materials it intends to produce.

Initially, the Government produced most of the electronic data on portable hard drives, provided by each Defendant's attorney.  The Government organized the data on these drives into 11 folders, each one divided into subfolders.  The folders were named "Discovery 1," "Discovery 2–7," and "Discovery 8" through "Discovery 16" to correspond to the Government's 16 chronological releases of discovery materials.  The folders were subdivided and named for various topics, including producing agencies, sources of production, and Defendant names.  A search could be performed within each individual file, but it was impossible to search for terms across folders and subfolders.  In May 2023, the Government produced a separate load file containing certain electronic discovery materials that can be loaded to a discovery review platform.  The load file contains the second category of discovery materials described above—namely, all electronic data other than the forensic images of electronic devices like computers, phones, and portable storage media.

### B.     Defendants' Efforts to Manage the Government's Production

Defendants initially struggled to navigate the Government's production.  The format of the Government's original production—individual files placed on portable hard drives—prevented Defendants' attorneys from searching across folders and files for relevant information.  This severely hindered Defendants' attorneys' ability to locate and review items that were relevant to their individual clients.

In February 2023, the Court appointed Mr. Aoki as the coordinating discovery attorney.  As noted above, in May 2023, the Government provided Mr. Aoki with a load file containing a portion of the Government's electronic discovery materials.  At the August 16, 2023 hearing, Mr.

Aoki explained he is processing the Government's load file so that it can be placed on a discovery review platform. Specifically, Mr. Aoki is loading the data into a Casepoint database so that Defendants' attorneys can access and review those materials on the Casepoint review platform. Mr. Aoki is also converting the forensic images of cell phones and hard drives into report files that are reviewable in Casepoint.

Mr. Aoki explained some categories of discovery materials present special challenges. Mr. Aoki stated the wiretap records, bank records, and forensic images require extensive preparation. In order to expedite this portion of data processing, Mr. Aoki employed a third-party vendor to isolate useful wiretap data files from other commingled files and pair wiretap audio recordings with other related wiretap records. Mr. Aoki and his team are also manually "coding" thousands of handwritten checks found in the bank records. Coding is necessary so defense counsel can search across the documents and sort the checks by name, date, and amount.

At the August 16, 2023 hearing, Mr. Aoki estimated Defendants would have access to the wiretap data in Casepoint in two weeks, the forensic images in two months, and the checks and bank records in mid-November.

C.   **Government Assistance With Discovery Materials**

The Government has provided assistance to defense attorneys upon request and maintains it will continue to do so. Specifically, the Government has: (1) provided a load file for a significant portion of the discovery; (2) made "reverse proffers" to various Defendants; (3) identified "hot documents" it believes are relevant to the charges against some individual Defendants and answered questions about discovery materials from individual defense attorneys; and (4) worked to create and provide access to a separate electronic discovery review database and platform.

The "reverse proffer" presentations warrant additional explanation. Each presentation describes the Government's overall theory of the case and summarizes the evidence the Government intends to use against a particular Defendant. At the August 16, 2023 hearing, the Government provided Defendant Bussey's reverse proffer presentation as an example. Doc. 713-2. The presentation is a 68-page PowerPoint slideshow. In the presentation, the Government alleges facts in support of each count against Defendant Bussey. Some slides contain a description of evidence the Government contends supports the allegations, and others contain images of documentary evidence. The evidence includes visa petitions, mail receipts, witness interviews, grand jury testimony, surveillance audio recordings and photos, wiretap recordings, and financial records. The Government has made reverse proffer presentations to seven Defendants and their counsel. The Government has offered to make similar reverse proffer presentations to the remaining Defendants upon request.

The Government is also creating its own discovery review database using the Eclipse platform. The Government intends to upload the same load file provided to Defendants to the Eclipse database and then provide access to Eclipse to all Defendants.[6] The Government estimated the initial Eclipse database would be available by mid-September. The initial Eclipse database will contain all the Government's electronic data except forensic images of the electronic devices. The Government plans to add forensic images to the Eclipse database as well and suggested the items might be available by the end of October.

---

[6] The Government stated at the August 16, 2023 hearing it is creating its own review database—largely duplicating Mr. Aoki's efforts with the Casepoint database—so that all Defendants will have access to a review platform. The Government stated Casepoint access will be free for indigent Defendants with appointed counsel, but Defendants with retained counsel will have to pay for Casepoint access. The Government intends to provide free access to the Eclipse database to all Defendants.

The Government explained it will use the Eclipse database as well.  As a result, it will construct and use a "tagging palette."  The Government described the tagging palette as a collection of tags, or labels, the Government will use to categorize discovery files for searching and sorting individual items within the Eclipse review platform.  The Government intends to make the tagging palette available to Defendants.  The Government explained it does not ordinarily provide tagging palettes to defendants because doing so provides insight about the Government's assessment of the evidence.  However, in this case, the Government is providing the tagging palette to Defendants because of the extraordinarily large amount of data.

## DISCUSSION

I.  **Parties' Positions**

Defendants ask the Court to order the Government "identify the specific documents which it expects to use in its case-in-chief at trial."  Doc. 549 at 3.  The Government agrees the Court has the authority to grant the requested relief, but it argues the Court should deny Defendants' request in these circumstances.  Doc. 557.

Defendants argue they are unable to adequately prepare for trial given the enormous volume of discovery materials and the difficulties they have had managing those materials.  Defendants argue the Government has not sufficiently assisted them with the discovery materials.  At least one Defendant also argued the Government should be required to identify evidence it will use in its case-in-chief because that evidence will provide the Court with better information when ruling on any request for severance.

The Government argues the requested relief is not warranted for several reasons.  The Government argues it has sufficiently assisted Defendants with managing and navigating the discovery materials.  The Government has provided "hot docs" to defense counsel upon request,

provided "reverse proffer presentations" for individual Defendants, and assisted the appointed defense coordinating discovery attorney.  Id.  The Government will also provide access to the Eclipse discovery review tool.  The Government also argues the Indictment is detailed, which will assist Defendants with identifying important evidence.  Ultimately, the Government argues it is too early to identify specific evidence it will use in its case-in-chief because the Government is uncertain how trial will proceed considering ongoing plea negotiations and possible motions for severance.  The Government is not categorically opposed to early identification of its trial exhibits but argues it should not be required to provide that information at this time.

**II.    Legal Standard**

Courts may order appropriate discovery relief for good cause.  Fed. R. Civ. P. 16(d)(1). Federal Rule of Criminal Procedure 16, including Rule 16(a)(1)(E)(ii), "does not *require* the government to make specific identification of its case-in-chief documents" before trial.  United States v. Carranza, No. 1:05CR197-4, 2007 WL 2422033, at *3 (N.D. Ga. Aug. 21, 2007) (emphasis in original).  However, "this fact does not endow the Government with the right to drown a defendant in a sea of irrelevant, or even tangentially relevant, documents . . . ."  United States v. Perraud, No. 09-60129-CR, 2010 WL 228013, at *11 (S.D. Fla. Jan. 14, 2010).  Thus, courts consider motions for identification when there is an exceptionally large production of discovery material.  See id. (concluding a court may order relief "in appropriate circumstances" when considering a motion for identification, but "courts should not entertain such requests for relief lightly").

Here, the parties agree the Court can grant the relief Defendants request, but they disagree about whether there is good cause for the Court to do so.  The parties do not identify a precise legal standard for evaluating good cause in a motion for identification.  See Doc. 557 at 9

("The Eleventh Circuit has not yet addressed this issue."). However, persuasive authority often focuses on the following aspects of the litigation when evaluating whether a movant has shown good cause for a court to order the government to identify the evidence it will use in its case-in-chief: (1) the extent of the government's efforts to assist in identifying relevant information to defendants, (2) the amount of time defendants have to prepare for trial, and (3) the specificity of the indictment. See, e.g., United States v. Parker, No. 1:05-CR-0045, 2005 WL 8162816, at *2 (N.D. Ga. June 10, 2005) (considering time until trial, a government-provided discovery index, and the specificity of the indictment); United States v. Martin, No. 8:17-CR-301, 2018 WL 3617316, at *2 (M.D. Fla. May 21, 2018) (considering government efforts to assist defendants and trial schedule); United States v. Gilbert, No. 217CR00419, 2018 WL 2088389, at *4 (N.D. Ala. May 4, 2018) (considering trial schedule and specificity of indictment). The relevant circumstances of this litigation are addressed below.

### III. Analysis

#### A. Government Efforts to Assist With Discovery

Much of the parties' disagreement concerns the adequacy of the Government's efforts to assist Defendants with the voluminous discovery materials. In determining whether to order the government to identify case-in-chief evidence, courts frequently consider the extent to which the government has assisted defendants. Courts have recognized certain practices that are particularly helpful to defendants trying to navigate voluminous discovery materials.

Courts often find the government has provided adequate assistance where it provides a sufficiently detailed "roadmap" of relevant discovery materials, provides a set of "hot documents" that it deems to be central to the allegations against a particular defendant, or meets with defendants' attorneys and answers questions about discovery materials. See United States

11

v. Bickers, No. 1:18-CR-00098, 2019 WL 5587050, at *3 (N.D. Ga. Oct. 30, 2019) (denying motion for identification and noting the government provided a discovery roadmap and met with defense counsel); Perraud, 2010 WL 228013, at *12 (noting the government "indicated that it believes it has directed Defendants to all exculpatory evidence" and all documents containing defendants' names); Martin, 2018 WL 3617316, at *2 (noting government provided roadmap and hot documents); United States v. Causey, 356 F. Supp. 2d 681, 687 (S.D. Tex. 2005) (noting government provided hot documents); United States v. Ferguson, 478 F. Supp. 2d 220, 244 (D. Conn. 2007) (noting government provided hot documents).

Courts have also considered the government's efforts to provide defendants with the same electronic discovery review tools the government uses or with access to litigation support personnel.  Bickers, 2019 WL 5587050, at *3 (noting the government provided its discovery review software to defendant and provided access to litigation support specialists); Perraud, 2010 WL 228013, at *12 (noting the government provided defendants with the same search capabilities the government used); Ferguson, 478 F. Supp. 2d at 244 (noting the government had no better search capability than defendants).

In this case, the Government's initial production of discovery materials created significant challenges for Defendants trying to manage and navigate the data.  However, more recently, the Government has assisted Defendants with the large volume of data, and it represents it will continue to do so.  The Government has taken at least four noteworthy and beneficial steps to assist Defendants.

First, the Government provided a load file for Defendants, which will allow Defendants to process, manage, and review much of the data.  Once the coordinating discovery attorney processes the load file data, Defendants will be able to use Casepoint to review many of the

discovery materials. For example, Defendants will be able to search and sort thousands of checks by name, date, and amount and will be able to search and review relevant wiretap information. The provision of a load file mitigates many of the problems inherent in the Government's initial productions.

Second, the Government has provided reverse proffer presentations to some Defendants and has offered to provide similar presentations to the remaining Defendants. Defendant Bussey's reverse proffer presentation identifies at least some of the Government's key evidence against him, including specific visa petitions, surveillance recordings, and witness interviews. Defendant Bussey argues his reverse proffer presentation is not very helpful. Doc. 565 at 6. He contends the presentation was "made by the Government for the purpose of convincing Mr. Bussey to enter a guilty plea." Id. Mr. Bussey's counsel contends the reverse proffer does not address material seized during the November 2021 searches, which is the bulk of the evidence produced in discovery. Similarly, Defendant Chavez's counsel argues the reverse proffer presentations focus on the Government's theory of the case, not on particular pieces of evidence. At base, Defendants argue the reverse proffers are not a comprehensive collection of all evidence the Government will rely on at trial. Even assuming that contention is correct, it does not render the reverse proffers entirely unhelpful. The information in the reverse proffers will assist Defendants with navigating the large volume of discovery materials, particularly once the electronic discovery review platforms are fully functional. The reverse proffers—assuming they all resemble the exemplar provided to the Court—identify pieces of evidence the Government deems central to its case against a particular Defendant. Defendants should be able to easily locate these key pieces of evidence in the electronic discovery review platforms. Thus,

Defendants will be better able to understand and navigate the discovery materials than if the Government had not provided the reverse proffer presentation.

Third, the Government has identified "hot documents" for some Defendants and has offered to do the same for the remaining Defendants. The Government has also expressed its continued willingness to answer questions about discovery materials. As noted above, these practices have been recognized by courts as valuable assistance in dealing with voluminous discovery materials. Defendants acknowledge the Government has been available to answer questions about discovery materials but argue the Government's answers focus on the general theory of the case instead of evidence that supports the individual elements of the charged offenses. While Defendants may find the Government's answers unsatisfying, the Government has, nonetheless answered Defendants' questions, which cuts against ordering the Government to identify its case-in-chief evidence at this stage.

Fourth, the Government is developing the Eclipse database and will provide free access to that database and review platform for all Defendants. Importantly, the Government is also making its Eclipse "tagging palette" available to Defendants. Defendants will be able to see how the Government tagged evidence contained in the voluminous discovery production. This practice will enable Defendants to identify evidence with similar tags, providing some insight into the Government's assessment of the evidence. The Eclipse database and platform will be available to all Defendants, regardless of indigency. By providing access to the Eclipse database and platform, the Government has placed all Defendants on equal footing with the Government in terms of the ability to review discovery materials in this case.

Considering these efforts together, the Government has taken substantial steps toward assisting Defendants with processing, navigating, and reviewing the voluminous discovery

materials. These facts cut strongly against requiring the Government to identify its case-in-chief evidence at this time.

### B. Time to Prepare for Trial

Courts also consider the amount of time defendants have to prepare for trial when evaluating a request for the government to identify case-in-chief evidence. See Parker, 2005 WL 8162816, at 2 (noting defendant had not complained he would not have adequate time to review discovery materials); Order, United States v. Campbell, No. 1:04-cr-424 (N.D. Ga. June 15, 2006), ECF No. 124, p. 4 (denying a motion for identification because, among other things, defendants had access to discovery documents for at least six months before trial). Where voluminous discovery materials make it difficult for a defendant to prepare for a scheduled trial, courts generally recognize the defendant should ask the court to continue the trial, not order the government to identify case-in-chief evidence. See United States v. Jordan, 316 F.3d 1215, 1253 (11th Cir. 2003); United States v. Cho, No. 1:07-CR-130, 2008 WL 11438335, at *4 (N.D. Ga. May 19, 2008) (denying motion for identification and recognizing the moving defendant could ask for a continuance of trial if more time was needed to review discovery materials); See, e.g., United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264, at *3 (N.D. Ala. Mar. 3, 2004).

In this case, Defendants will have adequate time to prepare for trial, even considering the large volume of discovery materials. Production was complete on February 1, 2023, more than a month before Defendant Bussey filed his Motion for Identification. Doc. 549 at 2–3. Most of the discovery data was produced by November 2022. Defendants have now had at least 10 months to contend with the vast majority of the data. The Government initially produced the discovery material on individual hard drives in a difficult-to-review format, but Defendants now

have the benefit of a load file and multiple review platforms.  Defendants also now have Mr. Aoki's assistance, the hot documents collections, and the reverse proffers.

This case is not yet scheduled for trial.  Given the amount of time Defendants have had with the discovery materials provided on hard drives, together with two searchable databases, Defendants will have a fair amount of time to review the discovery and prepare a defense. Defendants will also have a sufficient amount of time to review the discovery materials, with the additional resources, before they must file motions for severance or other pretrial motions.  The pretrial motions deadline is December 15, 2023.  Doc. 721.  This provides Defendants at least a month, if not more, to utilize the Casepoint or Eclipse tools.  Defendants have also had at least a year to ask for specific Government assistance, hot documents, or reverse proffers.  Furthermore, the Court has acknowledged the possibility of pretrial motions filed after the December 15, 2023 deadline if a particular Defendant can show she was not able to identify the basis for a particular motion prior to that deadline.  In sum, Defendants have ample time to prepare for trial, even considering the voluminous discovery materials, and this cuts against ordering the Government to identify its case-in-chief evidence at this stage in the litigation.

C.     The Specificity of the Indictment

The Government argues the specificity of the Indictment will aid Defendants in navigating the discovery materials and, this fact cuts against ordering the Government to identify its case-in-chief evidence.  Defendants reject this argument and contend the Indictment provides very little insight into what relevant evidence might be contained in the discovery materials.

Courts sometimes find a sufficiently specific indictment weighs against granting a motion for identification.  See Gilbert, 2018 WL 2088389, at *4 ("[T]he specificity of the indictment should help to 'guide and focus' the Defendants' review."); United States v. Payne, No. 1:05-

16

CR-045, 2006 WL 8443229, at *2 (N.D. Ga. Dec. 5, 2006) ("Though there are multiple defendants in this case, the specific allegations in the indictment, combined with the indexes, discussed infra, should provide Defendants' counsel with guidance for determining which documents are relevant for which defendants."); Campbell, ECF No. 124, p.4 ("the indictment provides a substantial degree of specificity regarding the allegations against Defendant which should also serve to guide and focus Defendant's examination of the documents produced.").

The Indictment in this case is lengthy and detailed. Doc. 3. The Indictment is 50 pages and contains 54 counts. In it, the Government introduces the alleged conspiracy and the Defendants, including their alleged relationships with one another. The first count begins on page 13. Each count charges multiple Defendants, but not every count describes specific actions. For example, Count 53 charges 24 Defendants with money laundering conspiracy. Id. at 40–44. However, Count 53 describes only a few specific acts in furtherance of the conspiracy and only alleges acts by five Defendants and one Defendant's husband in furtherance of the conspiracy. As to the remaining Defendants, the Government alleges they collectively made and reported an unspecified number of financial transactions at a hotel-casino during a five-year span. Id. at 42–43.

This Indictment may be more detailed than others, but it provides little help in guiding Defendants through the enormous volume of discovery materials. To be sure, some of the allegations and charges are sufficiently definite that a Defendant could use the allegation to find some relevant evidence in the discovery materials. For example, an allegation about a particular fraudulent petition, where the petition is identified by date and petition number, could be used to locate relevant documents related to that petition. But many of the other Indictment allegations are broad. Some of the charges—particularly the three conspiracy charges—do not clearly

identify individual acts by individual Defendants, at least not in any comprehensive way. A Defendant could not reasonably use such broad or generalized allegations to navigate the voluminous discovery materials in this case to identify relevant evidence. Thus, the specificity of the Indictment provides, at best, minimal benefit to Defendants in terms of dealing with the large amount of discovery materials. This aspect of the litigation cuts nominally in Defendants' favor in the Court ordering the Government to identify its case-in-chief evidence, but the assistance provided by the Government and the time Defendants have to prepare for trial are far more compelling.

Based on all of the circumstances discussed above, I deny Defendants' request to order the Government to identify its case-in-chief evidence at this time. The Government has provided ample assistance to Defendants, and it states it will continue to do so. Defendants also have adequate time to prepare for trial, particularly given that trial has not been scheduled. While the specificity of this Indictment (or lack thereof) cuts somewhat in Defendants' favor, the other two aspects of this litigation far outweigh concerns about the language of the Indictment. However, considering the complexity of this case, and the volume of discovery materials produced, I order the Government to identify the evidence it intends to offer, use, or refer to in its case-in-chief no later than 30 days before the start of trial.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendant Bussey's Motion. The Court **ORDERS** the Government to identify the evidence it intends to offer, use, or refer to in its case-in-chief no later than 30 days before the start of trial. Defendants' requests for additional relief are denied. If the Government fails to meet its commitments to assist Defendants, the Court will reassess the need for additional relief.

**SO ORDERED**, this 6th day of October, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA