IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 5:21-cr-009-20 |
| | ) | |
| BRETT DONAVAN BUSSEY, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS NOVEMBER 16, 2021, SEARCH OF 410 WEST 6TH STREET,
TIFTON GEORGIA, AND COMPUTER AND ELECTRONIC DEVICES (DOC. 694)**

The United States moves the Court to deny Bussey's motion for the Court to conduct a *Franks* hearing and to suppress evidence. The search warrant was based on probable cause, described the location and items to be seized with particularity, and there were no material omissions or misstatements that justify a *Franks* hearing. Investigators relied in Good Faith on the warrant and suppression should be denied.

**1.     General Standards Relating to Search Warrants:**

Standing:

The Fourth Amendment "protects people, not places." *Katz v. United States*, 389 U.S 347, 351 (1967). A defendant has standing to challenge the admission of illegally obtained evidence only if there is a personal violation of a legitimate expectation of privacy. The expectation must be both subjectively held and objectively reasonable. *Id.*

Probable Cause:

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999) citing *United States v.*

1

*Gonzalez*, 940 F.2d 1413 (11th Cir. 1991). "Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The issuing judge is entitled to rely on the opinions and conclusions of experienced law enforcement affiants, who may ascribe entirely different meaning to seemingly innocent conduct because of their experience and training. *United States v. Harden*, 2023 WL 3933373 (SDGA 2023), internal citations omitted. With regard to a suspect's home, there is a recognized "common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding the fruits of a crime." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009), citing *United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981).

<u>Deference should be given</u>:    There is a deferential review of probable cause in a suppression context. The reviewing court should not review the affidavit *de novo* for probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). The court's task is "simply to ensure that the magistrate [judge] had a substantial basis for… concluding that probable cause existed." *Id*. The practical nature of evaluating probable cause in a search warrant application "justifies great deference' upon review and calls for upholding the judge's findings even in marginal or doubtful cases." *Id.*, see also *Illinois v. Gates*, 462 U.S. 213 (1983), *United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999). Defendants have the burden of proof to establish the warrant was defective. *United States v. Harden*, 2023 WL 3933373 (SDGA 2023) citing *United States v. Gonzalez-Renera*, 2021 WL 9758616, at *3 (NDGA 2021).

2

**2.      Bussey has failed to establish standing to contest the seizure of evidence.**

Although Bussey moves to suppress evidence related to the search of 410 West 6th Street, Tifton, Georgia, he fails to address his standing to suppress evidence that was seized from the residence and from electronic devices found within the residence.  Therefore, absent some showing of a subjective expectation of privacy that is objectively reasonable, the Court should deny his motion to suppress.

**3.      There was probable cause to search the target location.**

On November 16, 2021, upon application for a warrant submitted by US DOL OIG SA Kelly Linemann, United States Magistrate Judge Weigle issued a search warrant to search 410 West 6th Street, Tifton, GA, 31794.  Exhibit 1 (Application); Exhibit 2 (Attachments); Exhibit 3 (Affidavit); Exhibit 4 (warrant with Attachments).  As noted in the signed warrant, **the Judge specifically found probable cause** to search and seize the property described in the affidavit and attachments.  Exhibit 4.  This Court should not disturb the Magistrate's findings.

The 159-page affidavit established probable cause that a crime was committed, and that evidence would probably be found at that location.  The affiant is a seasoned law enforcement agent with over two decades of experience with specialized knowledge about the H-2A Visa Program, Human Trafficking, and the crimes being investigated.  Exhibit 3, ¶¶ 1-5.  The affiant provided an overview of the H-2A program.  As noted in paragraphs 9-23, the H-2A Visa program is a lawful program that allows farmers to use migrant workers to work in approved agricultural farms for a specific time period, conditioned on certain hard line rules.  Truthful paperwork must be submitted to and approved by the government.  The paperwork is submitted and signed under penalty of perjury.  The program requires workers to work at identified pre-approved locations. The workers must be provided transportation to and from the approved locations.  The workers

must be housed in suitable, pre-approved housing. The workers cannot be charged a fee to apply for the program. Once in the US, the workers must work in accordance with the pre-approved contract and must be paid US wages in accordance with the contract. Workers cannot be sold or transported to non-approved locations. If a migrant worker absconds, the employer has a duty to report the absconder. Workers must be provided with transportation back to the home country at the conclusion of the time period. There are other requirements outlined in the affidavit. *Id.*

The affiant outlined the overview of the criminal investigation. *Id.* ¶¶ 24-324. The affidavit outlined various investigative techniques that were employed, the targets of the investigation, the target locations to be searched, specialized knowledge related to labor trafficking organizations and why agents believed there was probable cause that evidence would be found at the particular location. *Id.* There was probable cause that crimes were being committed.

Since 2018, the Department of Homeland Security Investigations (HSI), the Diplomatic Security Service (DSS), the Federal Bureau of Investigation (FBI), and the United States Postal Service (USPS) has been investigating a transnational criminal organization (TCO) for fraudulently using the H-2A visa program to smuggle migrant workers from other countries into the United States under the pretext of being agricultural workers. Members of this conspiracy lie, cheat, and steal from the United States by submitting false paperwork; and members lie, cheat, steal, and exploit migrant workers looking for a better life. ¶¶ 24-30.

Agents used a number of investigative techniques to establish probable cause. Agents reviewed labor certification documents, immigration documents, and visa documents from the Department of Labor, Immigration, and the Department of State. Agents reviewed email records from search warrants, conducted a grand jury investigation, conducted a financial analysis, reviewed social media evidence obtained from search warrants, interviewed confidential sources

(CS), interviewed witnesses and victims, reviewed evidence from border searches, conducted undercover operations, conducted wiretaps, used GPS tracking warrants, conducted physical surveillance, and executed search warrants. **All of this evidence helped the grand jury determine probable cause to indict Bussey and the other defendants for the crimes outlined in the affidavit**.[1] This information also helped establish probable cause that evidence of the crimes would probably be found at the listed locations. ¶¶ 25-323.

In this case, conspirators, including Bussey, were part of a transnational criminal organization (TC0) that fraudulently used the H-2A program to smuggle foreign nationals into the United States under the pretext of being agricultural workers. This TCO submitted fraudulent H-2A applications to the government to fool the government into sending migrant workers to the US under the pretext that they would be working in compliance with the application. This TCO unlawfully charged foreign nationals a fee or smuggling debt to obtain the H-2A Visa. The organization bribed Georgia Department of Labor employees to unlawfully approve housing. The organization did not pay the workers pursuant to the terms of the contract, moved the workers to unapproved locations, and held workers' identification documents to pay off debts. ¶¶ 27-70.

Beyond the federal indictment wherein the federal grand jury found probable cause that Bussey and his conspirators violated federal laws (as noted in the affidavit), there was substantial evidence demonstrating probable cause that Bussey and others were engaged in this conspiracy and that Target Location 12 (410 West 6th Street, Tifton, Georgia) would probably have evidence of the crimes at the location. For example:

-Agents intercepted a number of pertinent calls wherein Bussey discussed filing fraudulent

---

[1] The federal grand jury found probable cause that Bussey and his other conspirators violated federal laws and returned an indictment against Bussey and his other conspirators *prior* to the submission or execution of the search warrants at issue.

petitions for Defendant Carrillo. Agents concluded from a review of intercepted phone calls, physical surveillance, and a review of Carrillo's financial records, that Carrillo pays Bussey for filing fraudulent petitions on Carrillo's behalf. ¶ 198.

-In 2019 and 2020, Bussey and Carrillo were intercepted on a wiretap call discussing bringing workers via the H-2A visa program to the US for a farmer in Tennessee to harvest marijuana but would claim they were harvesting tomatoes on the petitions. ¶ 199.

-Agents corroborated the information received via the wiretap about using H-2A workers to illegally harvest marijuana under the pretext of tomatoes. In 2020, Bussey filed two petitions for a Tennessee farmer to harvest tomatoes. The United States denied these petitions. ¶ 199.

-Agents confirmed a relationship between Bussey and Carrillo and reviewed records of payments from Carrillo to Bussey, consistent with payments Bussey would obtain from farm labor contractors prior to submitting documents to request H-2A workers. ¶ 200.

-On March 3, 2021, Bussey filed a petition on behalf of Jennifer Rangel requesting 68 workers to work at C & J Farms located at 1060 Sweet Gum Road, Alma, GA, 31510. They were to work from April 3, 2021, through June 15, 2021. They were to be housed at Comfortel Suites at 1007 Peterson Avenue, Douglas, GA. After the petition was approved and the workers arrived in the US, Bussey's conspirator, Carrillo received payments from other farmers. When interviewed, C & J Farms owner Jody Johnson stated that she never received any H2A workers under that petition. Further, investigators confirmed that none of the H-2A workers from the petition ever stayed at the Comfortel Suites. ¶¶ 201-203.

-The affiant, through her training and experience, concluded that Bussey and Carrillo submitted a false petition to bring workers to the US and lied about where the workers were going to work and stay. ¶¶ 204-207.

-Agents conducted surveillance at 410 West 6th Street, Tifton, Georgia, and determined that Bussey lived at that address with Linda Jean Facundo. (¶ 213).

-The affiant, through her training and experience, her participation in this investigation and other similar investigations, established probable cause that members of the TCO would keep records and evidence at their home (and other places). ¶¶ 71-93.

-Bussey submitted several petitions that contained fraudulent information and DOS has refused at least 833 visas associated with Bussey's petitions because of inaccurate or incomplete information. ¶ 222.

-In a covert recording, Bussey admitted to CS#2 that Jorge Gomez (a target) will approve housing if Gomez is paid a bribe. ¶ 223.

- In a covert recording, Bussey admitted that he has a recruiter in Mexico that finds workers for the H-2A program. The workers pay the recruiter to come to the US under the program and the recruiter pays Bussey for filing the paperwork. ¶ 223.

-In a covert recording, Bussey explained that petitioners request more workers than farmers actually need to allow the petitioners to sell the extra workers and to let workers abscond. ¶ 223.

-In a covert recording, when the CS said that the scheme was like a cartel, Bussey laughed and said: "but it's no drugs or anything like that, if at all. It's basically human trafficking." ¶ 223.

-Bussey prepared a petition from his home computer (target location) seeking 80 workers to come to the US to work at particular locations and to stay at a particular hotel. After the petition was approved, agents confirmed that the workers never worked at the approved locations or stayed at the approved hotel. ¶¶ 223-228.

These facts, combined with the grand jury indictment, demonstrate adequate probable cause that Bussey committed the alleged offenses. These facts also demonstrate why there is

7

probable cause to believe that evidence of the crime would be found at Bussey's residence.

Bussey attempts to negate probable cause by attacking the CS's credibility and by arguing that Bussey's duties as an agent are different than the duties of the employer and therefore, he did not submit fraudulent petitions. The United States submits these arguments are better suited for a trial, rather than a suppression hearing. The CS was only one piece of the puzzle related to probable cause. This Court should consider the evidence procured by the CS with greater scrutiny than other witnesses because he is a convicted felon who is attempting to benefit by providing the information, as noted in the affidavit. See Exhibit 3- n. 14. However, the statements outlined in the affidavit regarding discussions with Bussey and the CS were recorded. The admissions made by Bussey are also corroborated by other evidence in this case.

Bussey moves the court to disregard the CS recordings because "the CS got Bussey drunk." Nothing in the affidavit demonstrates that the CS forced Bussey to do anything. Whether he was drunk or not does not negate Bussey's actions in the conspiracy, does not negate the admissions he made on tape, and does not negate probable cause. While Bussey may have served as an agent, rather than an employer, this does not negate probable cause. As noted in the affidavit (and found by the grand jury), Bussey was part of a conspiracy wherein its members submitted false or fraudulent petitions seeking workers to come to the United States under the pretext of working at particular agricultural locations for US wages and staying at pre-approved locations. The conspirators, instead, unlawfully charged workers to come to the United States, often ordered more workers than necessary so "they could sell them," housed them at different, non-approved locations, and had them work at non-approved locations. Whether Bussey was simply an agent or not is immaterial to the fraud. He was knowingly part of the conspiracy that exploited thousands of foreign nationals. By his own words, he committed "human trafficking."

8

# 4. The warrant adequately describes the premises to be searched and the things to be seized.

Particularity requirement- generally:

The Fourth Amendment requires that search warrants "particularly describe the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This particularity requirement is intended to prevent "general, exploratory rummaging in a person's belongings." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* at 1348. While a search warrant must be sufficiently precise so as not to permit a general search, the test is the reasonableness of the description, elaborate specificity is not required. *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1345 (NDGA 2011), as cited in *United States v. Belayneh*, 2023 WL 3358154 (NDGA 2023). "Indeed, the Eleventh Circuit has acknowledged that 'the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances, and nature of activity under investigation permit." *Wuagneux*, 583 F.2d at 1350.

Bussey moves to exclude evidence by alleging the warrant does not describe the premises to be searched or the things to be seized. The government disagrees. Contrary to Bussey's assertions, the Application, Affidavit, and Warrant-all- describe with particularity the premises to be searched and the things to be seized.

**The Application**:

The heading states: In the Matter of the Search of: 410 West 6th Street, Tifton, Georgia, 31794. The Application refers the Court to Attachment A-12 for a more detailed description of the property to be searched. The Application refers the Court to the Affidavit for a detailed

description of the things to be seized. See Exhibit 1.

**The Affidavit**:

The Affidavit describes Target Location 12 as follows:

> 410 West 6th Street Tifton, Georgia 31794, to include all structures and vehicles, hereinafter referred to individually as "Target Location 12" and described in more detail in Attachment A-12. Target Location 12 is the residence of Defendant Brett Donavan Bussey….

See Exhibit 3, ¶ 70-l.

The Affidavit also incorporates Attachment B- an outline of the property sought to be seized, including records that may be found in electronic devices including phones, computers, storage media and other items. Exhibit 3, ¶¶ 325-332.

**The Warrant**:

The warrant heading describes the property to be searched as 410 West 6th Street, Tifton, Georgia, 31794. For a more particularized description of the property, the warrant states: "See Attachment A-12." For a more particularized description of the items to be seized, the warrant states: "See Attached Affidavit." Exhibit 4.

**Attachment A-12**:

Attachment A-12, that is referenced in the Application, the Warrant, and the Affidavit gives a detailed description of the particular place to be searched and the particular evidence to be seized. Exhibit 2. Attachment A-12, titled "Description of Target Location 12 to be Searched," states:

> The property to be searched is the premises located at 410 West 6th Street Tifton, Georgia 31794, to include all structures and vehicles, and referred to individually as "Target Location 12." Target Location 12 consists of at least one structure, a single-family residence with a black shingle roof, white siding, and a fireplace. Tift County property records indicate the property contains a shed.

Exhibit 2. Attachment A-12 also has a photograph of the house from the street view, an overhead

10

photo, and a copy of the floorplan.

        **Attachment B, titled "Items to be Seized and Searched."**

Attachment B details the items to be seized. It states in part:

> The items to be seized are evidence of violations of (1) Title 18, United States Code, Section 1349, conspiracy to commit mail fraud; (2) Title 18, United States Code, Section 1594, conspiracy to engage in forced labor; and (3) Title 18, United States Code, Section 1956(h) conspiracy to commit money laundering….

See Exhibit 2. Attachment B is seven pages long and it lists items to be seized, in whatever form, paper, electronic, etc.

Because the Warrant, the Attachments, and the Affidavit all describe the premises to be searched and the items to be seized with extreme particularity, Bussey's motion should be denied.

Bussey cites *Groh v. Ramirez*, 540 U.S. 551, 554 (2004), as justification for this Court to suppress the evidence. That case is distinguishable and not applicable. In *Groh,* the warrant did **not incorporate by reference the items listed in the application.** In the case at hand, the warrant did. In *Groh*, the magistrate signed the warrant even though it did not identify any of the items that law enforcement intended to seize. Further, the portion calling for a "description of the property" to be seized described the defendant's house, not the alleged weapons sought to be seized. The case at hand is distinguishable from the civil case of *Groh*. As noted, the case at hand adequately described the premises to be searched and the particular items to be seized. The warrant explicitly incorporated the affidavit and all attachments, including the detailed description of the property to be searched and the property to be seized.

Bussey claims the warrant was overbroad and lacking particularity. The Eleventh Circuit has held that a search warrant is not "overly broad" when a warrant authorizes the seizure of documents, records, bills, logs, and other items that related to violations of as specific crime and/or statute. *Signature Pharmacy Inc v. Wright*, 438 Fed. Appx. 741 (11th Cir. 2011). The Eleventh

11

Circuit has held that "because the description in the warrants refer to items that are evidence of a violation of certain statutes…, the items were described with sufficient particularity to allow… a seasoned law enforcement to identify the things to be seized." *Id.* at 745-46.  See also, *United States v. Belayneh*, 2023 WL 3358154 (NDGA 2023)(The court "found that the exact items of written correspondence, journal entries, and other writings to be seized could not have been known at the time the warrant was issued and, because the warrant was limited to a search of those items that relate to the [stated violations], the search warrant could not have been more specific or particularized."  The court allowed the evidence because it was not "overbroad.").  See also *United States v. Santarelli*, 778 F.2d 609, 615 (11th Cir. 1985). In *United States v. Bentancourt*, 734 F.2d 750 (11th Cir. 1984), the court stated that a warrant's description need not contain elaborate specificity, it is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.  The court upheld a search warrant that authorized the seizure of "all financial records" and patient records that relate to violations of 21 U.S.C. § 841(a)(1) and held it was not overbroad because it limited the seizure to only those records that are evidence of violations of the statute.  *Id.* at 755.

In the case at hand, the warrant limited the items to be seized to violations of Title 18, U.S.C. §§ 1349, 1594, and 1956(h).  Therefore, in accordance with the 11th Circuit, it was not overbroad.

Bussey cites *In re: Search of a Single-Family Home*, 2021 WL 3204201(N.D. Ill. 2021) in support of an "overly broad" and "lacking particularity" argument to justify the suppression of evidence seized from other electronic devices found at the target location.  In that non-binding child pornography case involving one target, the magistrate judge issued a warrant to search the premises as well as other electronic devices found at the residence.  The magistrate judge also

granted a search warrant to search the target's cell phones. However, the magistrate judge did not grant authority to search all cell phones found in the residence (not belonging to or being used by the subject) because there was no probable cause. There were no facts even presented to the magistrate judge that other individuals were using their electronic devices to commit any crimes. *In re: Search of a Single-Family Home* involved a single defendant committing child pornography offenses.

In the case at hand, there is adequate evidence in the affidavit that showed Bussey was part of a large transnational organization that conspired with others to commit multiple violations of federal law. Phone records establish he was in contact with many other members of the conspiracy, and one conspirator lived in the same house with him. The case at hand is distinguishable from *In re: Search of a Single-Family Home* and the Court should follow established 11th Circuit precedent, rather than an unbinding magistrate judge ruling in a completely different kind of case. Furthermore, Bussey has failed identify any evidence he seeks to suppress as a result of the search, and he has failed to demonstrate any standing. Therefore, this Court should deny the motion.

    **4.** **There were no material misrepresentations or omissions in the Affidavit that negate probable cause or justify a *Franks* hearing.**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses must be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted- is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is

> subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail, of course, is another issue.

*Franks*, 438 U.S. at 171-72. The burden of proof, by a preponderance of the evidence is on the defense. *Id.* In this case Bussey must prove: 1) that the alleged misrepresentations or omissions were knowingly or recklessly made by the affiant, Agent Linemann, and 2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants. *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Bussey has failed to meet the burden.

Bussey incorporates by reference allegations of "misrepresentations and omissions" from other motions filed in this case. The government responded to those allegations in the other motions and incorporates its response by reference.

Bussey argues that the affiant omitted facts regarding the rules relating to the certification and submission of H-2A petitions. Bussey submits that the government failed to highlight federal regulations outlined in the Code of Federal Regulations related to "agent" duties vs. employer duties. It is Bussey's contention that he was simply one who submitted petitions on behalf of others believing he was helping bring foreign nationals to the US via the H-2A process. While there may be alternative interpretations that Bussey wants to present to the Court about what he did and why he made certain admissions on tape, like: "[i]t's basically human trafficking," these alternative interpretations and arguments are better suited for a trial, not a *Franks* hearing. As noted throughout the affidavit (and found by the grand jury), Bussey was a member of a large conspiracy that submitted fraudulent documents to trick the United States into issuing H-2A visas. Once the workers were in the United States, believing they were going to be working at specified

locations for US pay, members of the conspiracy exploited them by housing them in unapproved locations, charging them unlawful fees, making them work at unapproved locations for unlawful wages, and subjecting them to other despicable acts.

An affiant has no duty to present every bit of information to the Court to justify a warrant. Warrants are appropriately issued when the affidavit establishes probable cause. To establish probable cause, the record must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462, U.S. 213, 238 (1983). In the case at hand, the affiant stated:

> This affidavit is based on my personal interviews and observations during the course of the investigation, on information conveyed to me by other law enforcement officials, and on my review of records, documents, and other physical evidence obtained in this investigation. It does not include each and every fact observed by me or known by the government and it is solely for the purpose of providing sufficient information to establish probable cause to search the premises below.

Exhibit 3, ¶ 7. The Court reviewed the affidavit and found probable cause. Because the omissions (if any) were not knowingly or recklessly made to mislead the Judge, and because they have no impact on the probable cause determination, this Court should deny the motion for a *Franks* hearing.

### 5. The Good Faith Doctrine Applies

Under the good faith exception, the Court will not suppress evidence obtained pursuant to a warrant unless (1) the issuing judge was knowingly misled by information the affiant knew, or should have known, was false; (2) the issuing judge "wholly abandoned his/her role;" (3) the application was so lacking indicia of probable cause to render reliance upon it unreasonable; or (4) the warrant was so facially deficient that reliance upon it was unreasonable. *United States v. Leon*, 468 U.S. 897, 923 (1984). The exclusionary rule is

designed to deter unlawful police conduct. When law enforcement officers act in good faith and in reasonable reliance upon a judge's order, exclusion is not warranted because there is no unlawful conduct to deter. *United States v. Travers*, 233 F.3dd 1327, 1329 (11th Cir. 2000). Bussey presents nothing to suggest that the good faith exception would not apply in this case. Thus, even if errors were made in the issuance of the search warrant, the good faith exception apples and this Court should deny the suppression motion.

        Respectfully submitted,

        JILL E. STEINBERG
        UNITED STATES ATTORNEY

By:   *s/ E. Greg Gilluly, Jr.*
        E. Greg Gilluly, Jr.
        Assistant United States Attorney
        TN 019397

22 Barnard, Ste. 300
Savannah, GA, 31404
912-652-4422