IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CASE NO 5:21-CR-009 |
| | ) | |
| MARIA LETICIA PATRICIO, | ) | |
| DELIA IBARRA ROJAS, AND | ) | |
| BRETT DONAVAN BUSSEY | ) | |

**UNITED STATES' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS MAIL FRAUD COUNTS**

The United States opposes Defendants Maria Patricio, Delia Rojas, and Brett Bussey's motions to dismiss Counts One through Seven of the Indictment, which charge mail fraud conspiracy (Count One) and substantive mail fraud counts (Counts Two through Seven), in violation of 18 U.S.C. § § 1349 and 1341.

| Docket No. (Doc.) | Filing Defendant | Motion |
| --- | --- | --- |
| 631 | Brett Bussey | Motion to Dismiss Mail Fraud Conspiracy (Count One) and Substantive Mail Fraud Counts (Four – Seven) |
| 802 | Delia Rojas | Motion to Dismiss Mail Fraud Conspiracy (Count One) |
| 809 | Maria Patricio | Motion to Dismiss Mail Fraud Conspiracy (Count One) and Substantive Mail Fraud Counts (Two – Three) |

Defendants argue the mail fraud conspiracy and substantive counts fail to identify the false representations or pretenses of the scheme to defraud; and therefore, these counts should be dismissed. Their challenges are without merit. The detailed Indictment is sufficient, contains every element of the offenses charged, properly outlines the factual details, and sufficiently apprises Defendants

of what they must be prepared to meet at trial. The Indictment meets the constitutional standard, and the motions are properly denied.

### A. The Indictment Sets Forth the Detailed Scheme to Defraud.

Twenty-three defendants, including Defendants Maria Patricio, Delia Rojas, and Brett Bussey, are charged for their role in an international mail fraud, forced labor, and money laundering conspiracy. Docs. 3 and 352. Relevant for this response, Defendant Maria Patricio is charged in Count One through Three, Defendant Delia Rojas is charged in Count One, and Defendant Brett Bussey is charged in Count One and Counts Four through Seven. Doc. 3. Count One charges a main fraud conspiracy in violation of 18 U.S.C. § 1349 and Counts Two through Seven charge substantive mail fraud counts in violation of 18 U.S.C. § 1341. In Count One, Defendants are alleged to have knowingly and willfully conspired, from 2015 through October 2021, with each other and others, to commit mail fraud by executing and attempting to execute a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, by using the United States mail, for the purpose of executing the scheme and artifice in violation of 18 U.S.C. § 1341. The conspiracy is charged pursuant to 18 U.S.C. §§ 1349 and 2. The introduction section in paragraphs 1 through 37, the object of the conspiracy in paragraph 40, the manner and means of the conspiracy in paragraphs 41 through 62, and the 61 overt acts in paragraphs 63(a) through 63(iii), all explain the scheme to defraud and exactly how the Defendants conspired to commit mail fraud conspiracy.

Paragraphs 3 through 13 of the Indictment explain the relevant laws that Defendants sought to avoid with their scheme to defraud. The Indictment explains how foreign nationals are granted visas to enter the United States and perform agriculture work under the lawful H-2A visa process. The Indictment further explains that in order for a foreign national to obtain an H-2A visa, qualifying sponsors based in the United States must complete a form, called Form I-129, Petition for Nonimmigration Worker ("Petition"). The Indictment further explains that the Petition is completed under penalty perjury and that the qualifying sponsor must certify that the information provided in the form was truthful and accurate. The Indictment further explains that the Petition is then mailed to the United States government to process and issues H-2A visas based on the information in the Petition.

The Indictment then explains that under the lawful H-2A program, foreign workers were then authorized to enter the United States and perform paid work for an agriculture employer harvesting crops for a specific period. The Indictment further explains that under the lawful H-2A program, the sponsor was required to pay the workers as required under the Petition, to not charge the workers unlawful fees, and to not confiscate the workers' identification documents.

The Indictment then explains how the charged Defendants and other members of the conspiracy mailed false Petitions to the United States government that caused the United States to issued thousands of H-2A visas. The Indictment also explains how the charged Defendants and other members of the conspiracy

3

exploited the workers for their financial gain by charging unlawful fees, confiscating identification documents, did not pay the workers as required under the contract, housed the workers in degrading living conditions, and threated workers with deportation and violence.  The Indictment also explained how the charged Defendants and other members of the conspiracy sought to hide their illegal proceeds.

The Indictment outlines the object of the conspiracy was to make money from illegal activities including mailing fraudulent Petitions, exploiting the workers, and then hiding the illegal proceeds.  The Indictment then sets forth in detail the manner and means of how the conspiracy operated.  The manner and means of the Indictment describes the scheme to defraud and identifies various ways the Defendants and other members of the conspiracy committed false and fraudulent representations.

The Indictment describes that it was part of the conspiracy that members would fraudulently recruit foreign workers to work in the United States by unlawfully requiring the foreign workers to pay excessive fees for the opportunity to come to the United States on an H-2A visa and work in the United States for pay. The Indictment further describes that it was part of the conspiracy that members would lie to the foreign workers and falsely guarantee that once in the United States, the workers would be paid under the terms of a contract, typically ten to twelve dollars per hour, with transportation, housing, and food provided.  The Indictment further describes that it was part of the conspiracy that members would

smuggle the unlawful fees paid by the foreign workers to conspirators located in the United States. The Indictment further describes that it was part of the conspiracy that, after receiving the unlawful fees paid by foreign workers, members located in the United States would prepare and mail fraudulent Petitions seeking nonimmigrant H-2A visas for the foreign workers to enter the United States. The Indictment further describes that it was part of the conspiracy that members would unlawfully threaten and coerce workers and witnesses to provide materially false information to government officials to hide violations of federal immigration and visa laws. The Indictment further describes that it was part of the conspiracy that members would unlawfully require the foreign workers to pay for their border crossing fees, transportation fees, lodging fees, and food expenses. The Indictment further describes that it was part of the conspiracy that members would require the worker to pay back a smuggling debt, resulting in debt-bondage if a foreign worker could not afford the unlawful fees.

The Indictment further describes that it was part of the conspiracy that members would confiscate their passports and H-2A visas to prevent the workers from leaving or contacting law enforcement once the foreign workers entered the United States on the H-2A visa. The Indictment further describes that it was part of the conspiracy that members would force the foreign workers to work in agriculture fields in the United States for little to no pay in violation of the H-2A visa process. The Indictment further describes that it was part of the conspiracy that members would pay the foreign workers in cash and not under the terms of

the Petition. The Indictment further describes that it was part of the conspiracy that members would force the foreign workers to live in crowded, unsanitary, and degrading living conditions. The Indictment further describes that it was part of the conspiracy that members would threaten the workers with deportation or violence if the foreign workers did not pay the unlawful fees, refused to work off their illegal smuggling debt, or contacted law enforcement. The Indictment further describes that it was part of the conspiracy that members would use foreign workers as a work force and sell or trade workers in exchange for money to other members of the organization. The Indictment further describes that it was part of the conspiracy that members would require the foreign workers to work at unapproved locations such as restaurants and golf clubs. The Indictment further describes that it was part of the conspiracy that members would force foreign workers to pay additional unlawful fees to get their passports and H-2A visas back from conspirators.

The Indictment further describes that it was part of the conspiracy that members would allow some foreign workers to abscond and not work in agriculture fields under the terms of the H-2A visa program, but only if they paid additional unlawful fees. The Indictment further describes that it was part of the conspiracy that members would take the unlawful fees paid by the foreign workers and divide the illegal proceeds among other conspirators involved in the scheme. The Indictment further describes how members of the conspiracy would hide the illegal proceeds to avoid detection.

The Indictment contains 61 overt acts that were committed in furtherance of the mail fraud conspiracy. The overt acts detail, for example, false Petitions that were mailed by certain Defendants, which workers entered on the false Petitions, and how the workers were exploited for members of the conspiracy's financial gain.

Counts Two through Seven of the Indictment incorporates by reference Paragraphs 1 through 37 of the Indictment – namely the relevant laws that Defendants sought to avoid with their scheme to defraud. Counts Two through Seven articulate the nature and components of each count charging Defendants Maria Patricio and Brett Bussey with the crimes of mail fraud under 18 U.S.C. § 1341. The gravamen of this crime is the use of the mail in furtherance of the scheme to defraud the United States government. The specific details of the mail transactions alleged provide for each separate count, on what specific date the mailing occurred, the exact Petition that was mailed, and how the Petitions were false. Counts Two through Seven describe that it was part of the scheme and artifice that the defendants, without authority and with an intent to defraud, would complete multiple Petitions with false and fraudulent information. Counts Two through Seven further describe that it was part of the scheme and artifice that the defendants, without authority and with an intent to defraud, would obtain fraudulent signatures and fake documents for purposed employers based in the United States for the foreign workers for the fraudulent Petitions. Counts Two through Seven further describe that it was part of the scheme and artifice that the defendants, without authority and with an intent to defraud, would then mail these

false and fraudulent Petitions to the United States government, causing the United States to issue H-2A visas to foreign nations.

The Indictment is more than sufficiently detailed and alleges the essential elements of the crimes with which Defendants are charged in a manner that permits Defendants to prepare a defense and plead double jeopardy in any future prosecution for the same offenses.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

### B. The Sufficiency of a Criminal Indictment is Determined on its Face.

Where the criminal statute sets forth all the elements of the offense charged, an indictment is sufficient if it simply tracks the language of the statute. *Id*. at 117 (1974); *United States v. Ramos,* 666 F.2d 469, 474 (11th Cir. 1982).  But where the statutory language does not state all of the essential elements of the crime, the indictment must perform that role. *United States v. Russell,* 369 U.S. 749, 765 (1962). While an indictment should also set forth the "essential facts" of the charged offense, Fed. R. Crim. P. 7(c)(l), it is not necessary for an indictment to recite all the evidence the government will present at trial to support the charges. *United States v. Lehder-Rivas,* 955 F.2d 1510, 1519 (11th Cir. 1992); *United States v. Martel,* 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Crippen,* 579 F.2d 340, 342 (5th Cir. 1978) ("It is not necessary for the indictment . . . to allege in detail the factual proof that would be relied upon to support the charges.").

"'The sufficiency of a criminal indictment is determined from its

8

face.'" *United States v. Salman,* 378 F.3d 1266, 1268 n.4 (11th Cir. 2004) (quoting *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992)). In assessing whether an indictment meets minimal constitutional standards, its allegations are to be accepted as true and "viewed in the light most favorable to the government …." *United States v. Sharpe,* 438 F.3d 1257, 1258-59 (11th Cir. 2006). Courts are to give the indictment a commonsense construction and determine its validity based on practical, not technical considerations. *United States v.McGarity,* 669 F.3d 1218, 1235 (11th Cir. 2012); *United States v. Gold,* 743 F.2d 800, 812 (11thCir. 1984). The Court is not permitted to review the sufficiency of the evidence that will be offered in support of an indictment's allegations, for "[t]here is no summary judgment procedure in criminal cases." *Critzer,* 951 F.2d at 307; *Salman,* 378 F.3d at 1267-68 (a district court may not dismiss an indictment prior to trial on the ground of insufficient evidence).

### C. The Indictment Properly Alleges Conspiracy to Commit Mail Fraud and Mail Fraud and Meets the Constitutional Standard.

Defendants claim that the Indictment is defective because it fails to contain sufficient factual allegations to charge an essential element of the mail fraud counts. Defendants argue that the Indictment fails to allege a scheme to defraud and does not contain sufficient notice of what Defendants must be prepared to meet. These contentions rest upon a misreading of the Indictment and the alleged scheme to defraud.

9

To convict a defendant of conspiracy to commit mail fraud under 18 U.S.C. § 1349, the United States must prove (1) the existence of an agreement or common purpose to execute a scheme to defraud, and (2) use of the mail or wire systems to further the scheme. *United States v. Smith*, 934 F.2d 270, 274 (11th Cir. 1991). To convict a defendant of mail fraud under 18 U.S.C. § 1341, the United States must prove intentional participation in a scheme to defraud; and (2) the use of the mail in furtherance of that scheme. *See United States v. Hasson*, 333 F. 3d 1264, 1270 and n. 7 (11th Cir. 2003); *United States v. Ellington*, 348 F. 3d 984, 990 (11th Cir. 2003). Thus, the Indictment needs to allege a scheme to defraud and the use of the mail to further the scheme.

Courts have construed the phrase "scheme to defraud" broadly. *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002). To establish a scheme to defraud, the government must offer "proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011). In addition, the government must prove the defendant's intent to defraud. *Id.* at 1239. A scheme to defraud requires the intention to harm the victim, distinguishing it from a "scheme to deceive" the victim, but not harm them. *United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir. 2016), *abrogated on other grounds by United States v. Takhalov*, 838 F.3d 1168 (11th Cir. 2016). The intent to harm means "to obtain, by deceptive means, something to which [one] is not entitled." *Id.* In distinguishing between a scheme to deceive and a scheme to defraud, courts

consider whether the defendant "lie[d] about the nature of the bargain itself." *Id*. A defendant can lie about the nature of the bargain by lying about the price or the characteristics of the good. *Id*. at 1313-14.

This Indictment is a speaking indictment with detailed general allegations, paragraphs describing the manner and means of the conspiracy to commit mail fraud, and overt acts in furtherance of that conspiracy. The Indictment also alleges the nature and components of each substantive crime of mail fraud in Counts Two through Seven.

The scheme to defraud is sufficiently alleged in the Indictment. It specifically alleges that Defendants and members of the conspiracy misrepresented material facts calculated to deceive foreign workers out of money and used the mail to further their scheme to defraud the workers. Defendants or members of the conspiracy submitted false information on Petitions for foreign workers. Defendants or members of the conspiracy obtained fraudulent signatures and fake documents used on Petitions for foreign workers. Defendants or members of the conspiracy used the mail to send the false Petitions to the United States government, causing the government to issue H-2A visa for the foreign workers. Defendants or members of the conspiracy lied to foreign workers and charged them fees that they were not required to pay. Defendants or members of the conspiracy lied to foreign workers and did not pay them as required under the Petition. Defendants or members of the conspiracy deceived foreign workers and confiscated their identification documents when they entered the United States to prevent the

workers from leaving. Defendants or members of the conspiracy deceived the workers by threatening them with violence and deportation if they tried to leave. Defendants or members of the conspiracy participated in this scheme to defraud the workers all to cheat the system for their financial gain. Defendants' arguments that the Indictment does not allege a scheme to defraud fails by a common sense reading of the face of the Indictment.

Defendant's constitutional argument also fails. This Indictment is more than sufficiently detailed and alleges the essential elements of the crimes with which Defendants are charged in a manner that permits Defendants to prepare a defense and plead double jeopardy in any further prosecution for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

In conclusion, the narrative Indictment in this case tracks the language of the criminal statutes and fairly and adequately informs Defendants of the charges against them. Given the detail, evidence, and other specific information disclosed in the Indictment, Defendants motions to dismiss the mail fraud conspiracy and substantive mail fraud counts are properly denied.

*Signatures on the Following Page*

Respectfully submitted,

JILL E. STEINBERG
UNITED STATES ATTORNEY

BY:   */s/ Tania D. Groover*

Tania D. Groover
Assistant United States Attorney
Georgia Bar No. 127947
Post Office Box 8970
Savannah, Georgia 31412
Telephone: 912-652-4422
Facsimile: 912-652-4388
E-mail: tania.groover@usdoj.gov


BY:   */s/ E. Gregory Gilluly, Jr.*

E. Gregory Gilluly, Jr.
Assistant United States Attorney
Tennessee Bar No. 019397
Post Office Box 8970
Savannah, Georgia 31412
Telephone: 912-652-4422
Facsimile: 912-652-4388
E-mail: greg.gilluly@usdoj.gov