UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | INDICTMENT NUMBER: |
| | ) | 5:21-CR-09-20 |
| BRETT DONAVAN BUSSEY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BUSSEY'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS SEARCH OF 410 WEST 6TH STREET, TIFTON, GEORGIA, AND COMPUTER AND ELECTRONIC DEVICES**

Defendant Brett Bussey files this, his Reply to the Government's Response to his Motion to Suppress the Search of 410 West 6th Street, Tifton, Georgia, and Computer and Electronic Devices and shows this Court the following:

Mr. Bussey moved to suppress the evidence seized from the search of his home, computer, and electronic devices. Doc # 694. The government questions whether he has standing. Doc # 886, p. 3. But "[i]t has long been settled that one has standing to object to a search of . . . his home." *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987). The government applied for this search warrant after the Microsoft warrant, doc # 637, and after the wiretaps. Doc # 651. Bussey has challenged the infirmities of both

affidavits in other motions to suppress, which he relies on here: Much of the same information was put in the search warrant for his home.

Bussey described the warrant produced in discovery as a two-page document with no attachments that described the person or property to be searched, or the things to be seized. Doc # 694, p. 4. The government seemingly does not quarrel with this description, offering that attachment A-12 and the search warrant affidavit were incorporated by reference into the warrant itself. Doc # 886, p. 11. Instead, this warrant referenced attachments that were not attached, and were not incorporated by reference into the warrant itself. Doc # 694-4 at 1. As Bussey noted in his motion Doc # 694, p. 4-5, *Groh v. Ramirez*, 540 U.S. 551, 557 (2004), allowed that "a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."

*Groh* cited a series of cases as examples. *E.g., United States v. McGrew*, 122 F.3d 847, 849-50 (9th Cir. 1997)(noting warrant referred to "an attached affidavit which is incorporated herein," but government "offered no evidence that the affidavit or any copies were ever attached

2

to the warrant or were present at the time of the search of McGrew's home"); *United States v. Williamson*, 1 F.3d 1134, 1136 & n. 1 (10th Cir. 1993)(noting application or accompanying affidavit "can cure a defective warrant only when *both* of two requirements are met: 'first, the affidavit and search warrant must be physically connected so that they constitute one document and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference'"); *United States v. Blakeney*, 942 F.2d 1001, 1025-26 (6th Cir. 1991)(relying on *Maxwell*); *United States v. Maxwell*, 920 F.2d 1028, 1032-34 (D.C. Cir. 1990)(requiring attachment of affidavit and "'suitable words of reference' evidencing magistrate's explicit intention to incorporate the affidavit"); *United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990)(finding affidavit can provide sufficient description if it accompanies the warrant and the warrant uses suitable words of reference to incorporate the affidavit); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980)(requiring affidavit to accompany the warrant and warrant "uses suitable words of reference").

    The government argues that the warrant "explicitly incorporated the affidavit and all attachments, including the detailed description of

the property to be searched and the property to be seized." Doc # 886, p. 11. Again, though, the government produced the warrant in discovery as a two-page document, lacking any attachment. While the warrant referred to "Attachment A-12" and "Attached Affidavit," it apparently did not expressly incorporate them by reference or attach those documents to the warrant. Under *Groh*, the warrant is facially invalid.

As for Bussey's argument that the affidavit failed to particularize the things to be searched or seized with respect to computers and cell phones, doc # 694, p. 6-8, the government argues in part that the affidavit asserted that he was "part of a large transnational organization that conspired with others to commit multiple violations of federal law," that he communicated with other members by phone, and that one conspirator lived in the Tifton house. Doc # 886, p. 13. But the affidavit represented

> Because several people share some of the Target Locations as a residence, it is possible that some of the Target Locations will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that [sic] it is possible that the things described in this warrant could be found on any of those computers

4

or storage media, the warrant applied for would permit the seizure and review of those items as well.

Doc # 694-3 at ¶330.

The government mainly cites *Signature Pharmacy, Inc. v. Wright*, 438 Fed. Appx. 741 (11th Cir. 2011), to argue that this warrant was not overly broad. Doc # 886, p. 11-12. That case involved a search warrant that authorized seizure of all property constituting evidence of certain crimes. *Signature Pharmacy*, 438 F.3d at 745-46. It does not discuss the situation Bussey presents: that the affiant seeks seizure of *all* computers (including cell phones) in the house and intends to review everything he seizes even if "persons who are not suspected of a crime" own or use them – which is not the test established in *Riley v. California,* 573 U.S. 373 (2014).

The government asserts that there was probable cause to search Bussey's residence, citing first generalized allegations about the conspiracy. Doc # 886, p. 3-5. It then turns to the affidavit's specific allegations about Bussey. Doc # 886, p. 5-7. Bussey's motions details at length the problem with these allegations and why the Court should hold

a *Franks* hearing. Doc # 886, p. 8-18. But Bussey mentions a few things here.

The search warrant authorizing the search of Bussey's residence was the culmination not just of a defective affidavit, but of a defective affidavit leading to the Microsoft warrant and a defective application leading to a series of interception orders. Doc # 637, Doc # 651. Like the Microsoft affidavit, this affidavit identified a single (although different) "fraudulent" petition. Doc # 694-3 at ¶¶224-28. Fact-checking the "fraudulent" petition in the Microsoft petition showed that it only could be characterized as "fraudulent" if the agent ignored the larger regulatory scheme and information obtained during the case. Doc # 637, p. 5-11. The same is true the single "fraudulent" petition identified in this search warrant affidavit. When one looks to the supporting documentation behind the "fraudulent petition" allegations in ¶¶224-28 of the affidavit, doc # 694, p. 14-18, Bussey filed an ETA 9142 as an agent for J.R., the employer. J.R. did not communicate with the owner of a peanut and grain operation, who then called Bussey (an old friend). J.R. responded to a notice of deficiency expressing concern with eligibility by removing the peanut and grain operation from the application. The hotel

owner dealt with J.R. exclusively, and the voluntary removal of the peanut mill from the application by *J.R.* was why workers did not stay or work at approved locations.

This case is troubling: agents have ignored documentation in their possession because it does not support their conclusions. As with other motions to suppress and replies, Bussey asks the Court to hold a *Franks* hearing and suppress the evidence obtained from this search. As explained in those motions and replies, an agent's material misrepresentations and omissions that led to a search warrant affidavit would prevent reliance on the good-faith exception to the exclusionary rule.

This the 19th day of March, 2024.

        Withers Law Firm PC

        */s/Thomas A. Withers, Esq.*
        Attorney Bar Number: 772250
        Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com

## CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This the 19th day of March, 2024.

                                      Withers Law Firm PC

                                      */s/Thomas A. Withers, Esq.*
                                      Attorney Bar Number: 772250
                                      Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com

8