**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 5:21-cr-9 |
| BRETT DONOVAN BUSSEY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Defendant Bussey filed a "Motion to Suppress the August 14, 2019 Search Warrant Directed to Microsoft." Doc. 637. This matter is fully briefed. Docs. 884, 936. I held a hearing on this Motion. Doc. 1133 (hearing transcript). Bussey's counsel and counsel for the Government appeared at the hearing, and the parties provided additional argument and evidence. Id. For the following reasons, I **RECOMMEND** the Court **DENY** Bussey's Motion to Suppress the August 14, 2019 Search Warrant Directed to Microsoft, including Bussey's request for a Franks hearing.

## BACKGROUND

On August 14, 2019, Special Agent Anthony Miranda from Homeland Security Investigations ("Agent Miranda") applied for a warrant to search information associated with six Microsoft email accounts, one of which belonged to Bussey. Docs. 637-1, 884-2. This information was stored at a premises controlled by Microsoft, an email provider headquartered in Redmond, Washington. Doc. 637-1 ¶ 1. In support of that warrant, Agent Miranda provided an affidavit describing an investigation into Bussey and several other individuals suspected of being members of a transnational criminal organization ("TCO"). The affidavit alleged that 15

individuals, in part by using a total of 16 email addresses, fraudulently used the United States's H-2A visa program to "smuggle Mexican nationals into the United States under the pretext of being an agriculture worker."  Doc. 637-1 ¶ 26.

In the affidavit, Agent Miranda stated that members of the organization unlawfully charged the workers for their visas, failed to pay the workers as required, and moved the workers to unapproved work locations.  Doc. 637-1 ¶ 26.  Agent Miranda described the H-2A visa program, including the certification, authorization, and admission process using the Department of Labor ("DOL") Form ETA 9142 and the Department of Homeland Security ("DHS") Form I-129 Petition for Nonimmigrant Worker.  Id. ¶¶ 7–24.  Agent Miranda stated that members of the criminal organization used the target email addresses "in connection with Petitions and supporting documentation that contain[ed] fraudulent information to DOL, DHS, and DOS [Department of State.]"  Id. ¶ 27.

Agent Miranda further explained that preservation requests regarding five target Gmail accounts were sent to Google in early 2019, followed by a grand jury subpoena.  Id. ¶¶ 28–29.  The resulting disclosure revealed that many IP addresses captured originated from virtual private networks ("VPNs").  Id. ¶ 30.  Similar requests and disclosures were made concerning six Microsoft email accounts, including information that showed many sessions associated with the accounts involved the use of VPNs.  Id. ¶¶ 31–35.  An Outlook account belonging to Brett Bussey was among the accounts included in the preservation request and subpoena to Microsoft.  Id. ¶ 31.  Agent Miranda then described a similar process involving two Oath accounts, through which a preservation request and subsequent grand jury subpoena showed that account owners used VPNs and internet hosting sites.  Id. ¶¶ 36–38.

As to Bussey, Agent Miranda explained that agents from DOL, DHS, and DOS reviewed documents that Bussey submitted "requesting authorization for alien beneficiaries to come temporarily to the United States as a nonimmigrant to perform services or labor." Id. ¶ 89. Through this review, agents determined that Bussey submitted three petitions for non-immigrant workers ("I-129 forms" or "petitions") with fraudulent information and that DOS refused 833 visas associated with Bussey's petitions. Id. ¶ 90. Agent Miranda also stated, "Agents believe that Brett Bussey may be a business partner with Inez Strickland, an individual discussed herein that filed Petitions with fraudulent information." Id. ¶ 89.

Agent Miranda discussed a specific application for temporary employment certification, referred to as an ETA 9142, that Bussey, as an agent, submitted electronically on January 28, 2019. Id. ¶ 91. The application listed the employer as "N.A." and requested 250 workers. One place of employment listed on the ETA 9142 was 224 Meadow Road, Alma, Georgia. In support of the application, Bussey also provided a letter dated November 14, 2018, signed by Grower Cory Burnam, which included a fixed worksite address of 224 Meadow Road. Id. ¶ 91.

On February 4, 2019, a Notice of Deficiency ("NOD") letter was sent to Bussey at his Microsoft Outlook email address, explaining that the ETA 9142 was deficient. Specifically, "it failed to provide proper documentation on the transportation of workers, failed to provide an original surety bond, and failed to provide a current hotel inspection where the workers would stay." Bussey responded to the email using the same email address on February 8, 2019, in which he "attached the response to the deficiency." Id. ¶ 92.

During an April 3, 2019 search of the 224 Meadow Road fixed worksite address, Agents determined that Katelyn Alderman owned the real property in question. When agents

interviewed Alderman's husband on the same date, he "stated that Katelyn did not request any H2A workers for the property and had nothing to do with the H2A process." Id. ¶ 93.

Agent Miranda also described investigations of other target subjects: David Harrell; Sherry Widner; Abbie-Marie Musgrove; Graciela Gomez; Daniel Mendoza; Sylvia Williams; Mark Hernandez; Maria Patricio; Javier Mendoza; Inez Strickland; Laura Gomez-Morales; Veronica Mendoza; Monica Saavedra; and Bertha Martinez. Id. ¶¶ 40–124. The affidavit stated that these subjects used the target email accounts to submit petitions and ETA 9142 applications with fraudulent or erroneous information. The following is a sample of the factual allegations against the other target subjects:

1.  Harrell, acting as an agent, submitted an ETA 9142 requesting workers to harvest sweet potatoes on behalf of Shuman Farms, supported by a letter signed by grower Roger Burns. In an interview, Mark Shuman, owner of Shuman Farms, stated he had never heard of Roger Burns and the only crop grown on the farm was onions. Id. ¶¶ 40–43.

2.  Widner, acting as an agent, submitted an ETA 9142, supported by a letter signed by Jim Cowart. The employer was listed as M.G. The farm owner, Anthony Cowart, stated he does not know M.C. and never worked with Sherry Widner. Cowart also stated the letter used to support the petition was fraudulent "as the letterhead and signature were not correct." Id. ¶¶ 44–47.

3.  Musgrove, acting as an agent, submitted an ETA 9142. The petition listed the employer as N. C.-G. and was supported by a letter signed by Carroll Hopkins on behalf of Hopkins Farms. When interviewed, Carroll Hopkins stated he does not know N. C.-G, has never filed for H-2A workers, and has never signed a letter like the one submitted with the ETA 9142 Musgrove submitted. Id. ¶¶ 48–51.

4.  Graciela Gomez, acting as an agent on behalf of H2A AG Services, submitted an ETA 9142 on August 16, 2017, supported by a letter on behalf of Hendrix Produce, signed by Kevin Hendrix. Hendrix later stated he has not filed for H-2A workers since 2016 and never used H2A AG Services to do so. Id. ¶¶ 52–58.

5.  Daniel Mendoza, acting as an agent on behalf of H2A Solutions, submitted an ETA 9142, supported by a letter on behalf of Joy's Blueberry farm, signed by grower Mickey Burnam. Mickey Burnam later stated he

had never used H-2A workers.  He explained that an individual named Tony had previously presented the letter to him, but he had not received any contact from Tony since the date he signed the letter.  Id. ¶¶ 59–65.

6.     Williams, acting as an agent, submitted an ETA 9142 on December 31, 2018.  The petition was supported by a letter signed by Remigio Morales on behalf of Morales Farms.  Agents attempted and failed to find any contact information for Morales Farms.  Records indicated Remigio Morales may have owned Morales Blueberry Harvesting in Homerville, Georgia, but that entity was dissolved on September 7, 2018.  In addition, the address Williams included on the petition, 107 Buckhead Road, Baxley, Georgia, did not appear in county records.  Id. ¶¶ 66–73.

7.     Hernandez, acting as an agent, submitted an ETA 9142 requesting 102 workers for Pittman Family Farms & Count Mark.  The petition was supported by a letter signed by grower Timmy Pittman.  Pittman later stated, while his farm does use H-2A workers, they use a different company to do so, and he always signs letters as "Timothy Pittman."  Id. ¶¶ 74–78.

8.     Patricio, acting as an agent, submitted an ETA 9142.  The petition was supported by a letter signed by G.M. Goodman.  Goodman later stated that he does not hire H-2A workers and did not request any in this instance either.  Id. ¶¶ 80–88.

9.     Javier Mendoza, acting as an agent, submitted an ETA 9142 on February 28, 2019, on behalf of Mike & Travis Farms.  The submission listed L.D. as the employer and was accompanied by a letter signed by grower Mike Collins.  In a January 31, 2019 interview, however, Collins stated L.D. had been fired and the farm now uses a different farm labor contractor.  Id. ¶¶ 94–99.

10.     Strickland, acting as an agent, submitted an ETA 9142 requesting 28 workers and listing their housing location as Motel 6 in Waycross, Georgia.  The petition listed S.P. as the employer.  The owner of the Motel 6 listed on the petition stated he had no record of a housing arrangement for 28 workers and had no relationship with S.P.  Id. ¶¶ 100–04.

11.     Laura Gomez-Morales, acting as an agent, submitted an ETA 9142 on March 27, 2018, requesting 47 workers.  The petition was supported by a letter on behalf of Mark 4 Produce.  The owner of Mark 4 Produce, Chris Howard, later stated he had not grown anything since 2016 and has never employed H-2A workers.  Id. ¶¶ 105–09.

12.     Veronica Mendoza, acting as an agent, submitted an ETA 9142 requesting 96 workers, supported by a letter on behalf of Hudson Pecan.  The petition stated the workers were needed from March through September 2018.

Sally Hatten, bookkeeper at Hudson Pecan, later stated to agents that the farm actually expected 24 workers for the 2019 pecan season and only for four months.  <u>Id.</u> ¶¶ 110–14.

13.    Saavedra, acting as an agent, submitted an ETA 9142 requesting 74 workers.  The petition was supported by a letter from Sanders Farms, signed by David Sanders.  An office worker at Sanders Farms later stated the farm had not petitioned for any H-2A workers "in quite a while" and would not do so moving forward.  <u>Id.</u> ¶¶ 115–19.

14.    Martinez, acting as an agent, submitted an ETA 9142 on February 13, 2018.  The petition was supported by a letter signed by grower Kevin Hendrix.  Hendrix later stated he had not filed for H-2A workers since 2016 and, when he did so, he used another company.  <u>Id.</u> ¶¶ 120–23.

In addition, the affidavit stated the target subjects each had a history of filing petitions with fraudulent information and visas refused by DOS due to incomplete or inaccurate information.  <u>Id.</u> ¶¶ 40–123.  Further, the National Processing Center ("NPC") had sent every target individual (except Harrell) an NOD letter at the target email addresses, and each individual responded via the same email to address the deficiencies.[1]

Agent Miranda explained that Microsoft computers are "likely to contain stored electronic communications . . . and information concerning subscribers and their use of Microsoft services, such as account access information, email transaction information, and account application information."  <u>Id.</u> ¶ 125.  That information, per Agent Miranda, "may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users."  <u>Id.</u>  Agent Miranda explained that Microsoft may possess information about users, including identification information, transactional information, and service-related communications.  <u>Id.</u> ¶¶ 126–29.  Agent Miranda stated this information can "establish and prove each element or alternatively . . . exclude the innocent from further

---

[1]    While the affidavit did not state Harrell received an NOD letter, the National Processing Center ("NPC") emailed Harrell directly to notify him of deficiencies in his ETA 9142, and Harrell responded with the same email.  Doc. 637-1 ¶ 42.

suspicion." Id. ¶ 129.  Agent Miranda stated that information gleaned from stored electronic information on an email account can also demonstrate who used an account, where and when the account was used, and may "provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation." Id.

I authorized the warrant on August 14, 2019.  Doc. 884-1.  Bussey now moves to suppress evidence obtained from the Microsoft warrant.  Doc. 637.  Bussey argues Agent Miranda's affidavit contained misrepresentations and omissions, and once these are addressed, the affidavit does not establish probable cause.  Bussey also moves for a hearing under Franks v. Delaware, 438 U.S. 154 (1978).

## LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  An individual only has standing to challenge a search or seizure only if he "can demonstrate a reasonable expectation of privacy against government intrusion."  United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) (citing Katz v. United States, 389 U.S. 347, 353 (1967)).  An application for a search warrant must be supported by probable cause, and "[i]t is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, (11th Cir. 2002) (citation and punctuation omitted).  Put another way, the affidavit "must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." Id. (citation

and punctuation omitted). Probable cause does not, however, require overwhelmingly convincing evidence but only "reasonably trustworthy information." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).

Affidavits supporting search warrants are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). To challenge the veracity of an affidavit in support of a search warrant, a defendant must make "a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)). If the defendant meets both requirements, he is entitled to an evidentiary hearing on the issue. At that hearing, the defendant must demonstrate, by a preponderance of the evidence, the existence of falsity or reckless disregard and must demonstrate that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Franks, 438 U.S. at 156.

The requirements for making a substantial preliminary showing are "not lightly met." Arbolaez, 450 F.3d at 1294. Negligent or insignificant false statements or omissions will not invalidate a warrant. United States v. Reid, 69 F.3d 1109, 1114 (11th Cir. 1995). Even so, intentional and reckless omissions will only invalidate a warrant "if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997).

The defendant's burden is to show that "absent those misrepresentations or omissions, probable cause would have been lacking." United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (quoting United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001)). "[I]f,

when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 428 U.S. at 172.

## DISCUSSION

Bussey contends that Agent Miranda's affidavit contained several misrepresentations and omissions.  I will first address Bussey's standing to challenge the warrant.  Then, I will describe each of the alleged misrepresentations and omissions described in Bussey's Motion.  Next, I consider Agent Miranda's affidavit without the alleged misrepresentations and omissions and Bussey's request for a Franks hearing.  In doing so, I consider whether Agent Miranda's affidavit would still support probable cause if it were "corrected" to address all of Bussey's allegations. Ultimately, even considering the "corrected" affidavit, I conclude the affidavit would still support probable cause.[2]

## I.    Bussey's Standing to Challenge the Microsoft Warrant

In its response to Bussey's Motion to Suppress, the Government argues that Bussey "fails to address his standing to suppress evidence that was seized from Microsoft" and states that "absent some showing of a subjective expectation of privacy that is objectively reasonable, the Court should deny his motion to suppress."  Doc. 884 at 3.  In his Reply, Bussey states he "has a reasonable expectation of privacy in his emails, so he has standing."  Doc. 936 at 3.

The Government and Bussey's submissions concerning standing are superficial.  The parties do not point to any dispositive or informative authority.  The parties also fail to present any substantive argument or evidence to support their respective positions.  Indeed, it is not clear

---

[2]    Because I conclude the affidavit would still support probable cause even if all the "corrections" were made, I do not need to determine whether the alleged misrepresentations and omissions were deliberately or recklessly made.

if the Government continues to challenge Bussey's standing following the submission of Bussey's Reply. Nonetheless, I address the Government's challenge. Based on the boilerplate challenge the Government made and the limited record, I conclude Bussey does have standing to challenge the email search warrant.

The search warrant is directed at Microsoft, and the warrant makes it clear that the warrant was sought so law enforcement could obtain access to personal email accounts, including Bussey's account. The Fourth Amendment protects against unreasonable searches and seizures into "the persons, houses, papers, and effects" of the people. U.S. Const. amend. IV. To have standing to challenge a search under the Fourth Amendment, a movant must "demonstrate a reasonable expectation of privacy against government intrusion." United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007). Fourth Amendment rights are personal, "and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) (citing Rakas v. Illinois, 439 U.S. 128, 133–34, 143 (1978)). To demonstrate a reasonable expectation of privacy, a movant must establish both a subjective element and an objective one. "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (quoting United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995)).

Questions of whether a movant has a reasonable expectation of privacy "in the contents of his personal emails sent voluntarily through [a] third-party ISP are complex, difficult, and far-reaching legal issues that [courts] should be cautious about resolving too broadly." Rehberg v. Paulk, 611 F.3d 828, 846 (11th Cir. 2010) (punctuation omitted). But the Eleventh Circuit has

held that "[t]he Fourth Amendment demands that the government demonstrate probable cause both to intercept real-time wire, oral, and electronic communications and to review the content of stored electronic communications." Vista Mktg., LLC v. Burkett, 812 F.3d 954, 970 (11th Cir. 2016).

On the current record, I conclude Bussey has a subjective expectation of privacy in his emails, and that expectation is objectively reasonable. Bussey unequivocally states that one of the Microsoft Outlook accounts targeted in the search warrant belongs to him. Doc. 936 at 3. Bussey asserts a subjective expectation of privacy in his personal emails, and the Government has offered nothing to contradict that assertion. The email account in question was not a work- or school-related account, but rather a personal email account through which an individual likely would convey personal communications. Users generally have an objectively reasonable expectation of privacy in personal email accounts. See United States v. Warshak, 631 F.3d 266 (6th Cir. 2010) (determining user had a reasonable expectation of privacy in the contents of personal emails and likening the medium to telephone calls or written correspondence); cf. Smith v. City of Pelham, No. 20-13210, 2021 WL 5863412, at *4 (11th Cir. Dec. 10, 2021) (finding, in the workplace context, a former employee had no reasonable expectation of privacy in work emails when employer policies established the employer's right to monitor user systems). I, therefore, conclude Bussey has demonstrated a reasonable expectation of privacy and has satisfied both the subjective and objective prongs.[3] Bussey has standing to proceed with this Motion.

---

[3]     My conclusions here are narrowly confined to the facts of this case and the limited nature of the challenge and response these parties present.

## II.    Alleged Misrepresentations and Omissions

Bussey contends that Agent Miranda's affidavit contained several misrepresentations and omissions about the ETA 9142 Bussey submitted on January 28, 2019.[4]  Specifically, Bussey argues the affidavit contained misstatements and omissions about Bussey's role as an agent in submitting the form.  Doc. 637 at 5–7 (referring to ¶¶ 18 and 91 of Agent Miranda's affidavit). Bussey also argues the affidavit omitted information about a November 14, 2018 letter from Cory Burnam that was submitted with the ETA 9142 application.  Id. at 8–9 (referring to ¶¶ 91 and 93 of Agent Miranda's affidavit).  Finally, Bussey argues the affidavit failed to explain that a Notice of Deficiency ("NOD") is standard practice under federal regulations.  Id. at 10–11 (referring to ¶¶ 90 and 92 of Agent Miranda's affidavit).

### A.    The H-2A Visa Process

It is helpful to begin with a discussion of the H-2A visa application and admission process.  The process provides context for Defendant Bussey's arguments about the ETA 9142 application.  The following summary of the application and admission process comes from Agent Miranda's affidavit.  Doc. 637-1 ¶¶ 11–24.  This portion of the affidavit is largely undisputed.

Foreign nationals may obtain authorization to work for pay in the United States by obtaining an H-2A non-immigrant visa.  The visa must be sponsored by a qualifying employer in the United States.  The prospective employer must apply to the DOL for a temporary labor certification.  Then, the sponsoring employer must petition the United States Citizenship and

---

[4]    Bussey incorporates all of these arguments into another motion to suppress.  Doc. 651.  Bussey's arguments are identical.  Even so, I have given careful, individualized consideration to each motion.

Immigration Services ("USCIS") for authorization. After the USCIS approves the authorization, the workers must apply for the H-2A visas at an embassy or consulate abroad. Id. ¶¶ 11–12.

A farmer, agent, or farm labor contractor may apply to the DOL for labor certification. A certified farm labor contractor may apply as an employer using an ETA 9142 Application for Temporary Employment Certification. The contractor must submit the name and location of each fixed-site agricultural business to which the contractor expects to provide workers, along with other information. An employer's agent can submit the ETA 9142 electronically. An electronically submitted ETA 9142 does not require an original signature at the time of submission. However, it must be signed by both the employer and the employer's agent before final approval. The employer and agent must also provide a valid email address. Id. ¶¶ 13–18.

Once the ETA 9142 is certified, the employer submits a Form I-129 Petition for Non-Immigrant Worker to USCIS. An agent may file the petition. The petition is signed by the agent and signed by the employer under penalty of perjury. The petition must be mailed to a USCIS service center. Upon USCIS approval, an embassy or consulate abroad may interview foreign nationals and process their H-2A visa applications. Id. ¶¶ 19–24.

## B.    Bussey's Role in Signing the ETA 9142

Bussey argues that Agent Miranda's affidavit contained misstatements and omissions about his role in preparing and signing the ETA 9142. Doc. 637 at 5–10 (referring to ¶¶ 18 and 91 of Agent Miranda's affidavit). Agent Miranda stated in his affidavit that the employer and the employer's agent both must sign the ETA 9142 under penalty of perjury. Doc. 637-1 ¶ 18. Bussey argues this is incorrect: only the employer signs the ETA 9142 under penalty of perjury. Bussey argues the affidavit omitted a detailed comparison between the agent's and the employer's certification.

Bussey provides a copy of the ETA 9142 in support of his argument, which contains the following employer certification:

> I hereby acknowledge that the agent . . . is authorized to represent me for the purpose of labor certification and, by virtue of my signature . . below, I take full responsibility for the accuracy of any representations made by my agent or attorney.
>
> I declare under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate.

Doc. 637-2 at 34. The agent's certification states:

> I hereby certify that I am an employee of, or hired by, the employer . . . and that I have been designated by that employer to act on its behalf in connection with this application . . . . I also certify that to the best of my knowledge the information contained herein is true and correct. I understand that to knowingly furnish false information in the preparation of this form and any supplement hereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in a Federal penitentiary or both (18 U.S.C. 1001).

Id. at 32.

Bussey argues the ETA 9142 certification shows he (as the agent) merely relayed information provided by the employer, who bears full responsibility for the accuracy of that information, but the affidavit omitted this important fact. Doc. 637 at 8–9.

## C.    The Worksite Location on the ETA 9142

Bussey asserts that the affidavit omitted important details about the worksite location identified as 224 Meadow Road in the ETA 9142. The 224 Meadow Road location is important because the owner of that property told investigators no workers had been requested or needed there. Agent Miranda relied on this fact to demonstrate that Bussey submitted ETA 9142 applications with fraudulent information.

Bussey's primary argument concerns the distinction between the street address—224 Meadow Road—and the geographic coordinates for the worksite. Doc. 637 at 8 (referring to

¶ 91 of Agent Miranda's affidavit); Doc. 1133 at 26–27.  The grower's letter, which was submitted with the ETA 9142, identified this particular worksite location by both geographic coordinates and by the street address, 224 Meadow Road.[5]  Doc. 637-4.  The ETA 9142 identified the worksite only by the street address—224 Meadow Road—and did not list any geographic coordinates.  Doc. 884-5 at 47.

Bussey argues the street address is an inaccurate worksite location that was mistakenly derived from the geographic coordinates provided by the grower.  According to Bussey, the geographic coordinates from the grower's letter point to a location approximately 0.3 miles from 224 Meadow Road.[6]  Doc. 637 at 8.  Bussey made this determination by inputting the coordinates into Google Maps.  Doc. 1133 at 27.  Bussey argues the affidavit failed to explain that the identification of 224 Meadow Road as a worksite location was a mistake, not a fraudulent submission.  Id.  In other words, the grower's letter points to a set of geographic coordinates, but the ETA 9142 identifies the worksite as the closest street address to those coordinates.  Bussey maintains this was an error and the employer—not the agent—is responsible for the error.

---

[5]     The application and the grower's letter provided information for several worksites.  Bussey's challenge concerns only one: 224 Meadow Road.

[6]     Bussey indicates that when the coordinates are entered into Google Maps, the location appears to be "246 Meadows Road."  Doc. 637 at 8.  Bussey states the relevant tax assessor's office has no physical address for "246 Meadows Road."  Id.  However, at the hearing, Bussey's counsel stated that the coordinates point to 224 Meadow Road.  Doc. 1133 at 27.  Thus, Bussey's position is a little unclear.  He may be arguing that the geographic coordinates point a "246 Meadows Road," which is 0.3 miles from 224 Meadow Road, but he acknowledges that "246 Meadows Road" is not a valid address.  On the other hand, based on the statements at the hearing, he may agree that the geographic coordinates point to 224 Meadow Road as the nearest valid street address.  Although there is some ambiguity in Bussey's position, he clearly argues that any inaccuracy in the worksite location was due to some error in converting the geographic coordinates to a street address and—importantly—he is not responsible for that error.

Bussey also contends the affidavit should have explained that the 224 Meadow Road location was only 1 of the 21 worksites identified in the ETA 9142 application and only 1 of 9 worksites that the grower identified in his letter.  Doc. 637 at 8 (referring to ¶ 91 of Agent Miranda's affidavit); Doc. 1133 at 26–27.

Relatedly, Bussey alleges the affidavit omitted contents of Grower Cory Burnam's November 14, 2018 letter, indicating that Burnam dealt only with the employer, and not with Bussey, the agent in this scenario.[7]  Doc. 651 at 7–8.  Bussey notes the letter "was signed by N.A., the employer, and was directed to N.A."  Doc. 651 at 8 n.4.  Bussey also contends the affidavit should have included important facts about investigators' contacts with Cory Burnam. Doc. 637 at 9–10 (referring to ¶ 93 of Agent Miranda's affidavit).  Specifically, Burnam told investigators that he used the labor contractor listed as the employer on the January 28, 2019 ETA 9142, but Burnam did not describe any conversations with Defendant Bussey.  Id.  The affidavit did not include these facts.

### D.    The Notice of Deficiency

Bussey argues the affidavit omitted important information about Agent Miranda's statement that Bussey has had at least three fraudulent petitions and 833 refused visas.[8]  Bussey also argues the affidavit omitted similar qualifying information concerning the NOD process.

---

[7]    It is unclear whether Bussey intends to make this argument—i.e., that Agent Miranda failed to fully describe Burnam's letter—in the instant Motion.  Bussey merely states the affidavit "failed to disclose information from" Burnam.  Doc. 637 at 12.  In contrast, in Bussey's motion to suppress wiretap evidence, Bussey clearly argued that Agent Miranda failed to describe Burnam's letter in the affidavit supporting the request for a wiretap.  Doc. 651 at 7.  In that motion, Bussey indicated that he was incorporating arguments from one motion to the next.  Thus, for the sake of completeness, I assume he intends to make the same argument here, and I analyze the argument as it relates to the Microsoft warrant.

[8]    Bussey makes this argument in another motion to suppress.  Doc. 694 at 13. These arguments are identical.  I have given careful, individualized consideration to each motion.

Doc. 637 at 10 (referring to ¶ 92 of Agent Miranda's affidavit).  Bussey states that federal

regulations provide for refusal of flawed petitions and for a deficiency response process.[9]  Id.

On February 4, 2019, an NOD was sent to Bussey, explaining the ETA 9142 was

deficient.  Specifically, the application "failed to provide proper documentation on the

transportation of workers, failed to provide an original surety bond, and failed to provide a

current hotel inspection where the workers would stay."  Id. at 4 (referring to ¶ 92 of Agent

Miranda's affidavit).  Bussey responded to the email using the same email address on February

8, 2019, and "attached the response to the deficiency."  Doc. 637-1 ¶ 92.  Because an NOD is not

"a marker of criminal activity" and "the regulations require its issuance and a chance to remedy,"

Bussey claims the affidavit misrepresented the importance of prior refused visas and of the

NOD.  Doc. 637 at 13 (referring to ¶ 92 of Agent Miranda's affidavit).  As with the ETA 9142

itself, Bussey also argues that any responsibility for the NOD should rest with the employer.  Id.

### III.    Franks Analysis

I consider the second Franks element first, namely whether the affidavit would still

support probable cause when corrected to address the alleged misrepresentations and omissions.

Affidavits in support of search warrants must "state facts sufficient to justify a conclusion that

evidence or contraband will probably be found at the premises to be searched."  United States v.

Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).  Here, that "premises" constitutes Defendant

Bussey's email account.  The Court must, therefore, determine if the affidavit establishes

probable cause to believe that evidence of a crime would be found in Bussey's email account.

---

[9]     See 20 C.F.R. § 655.141 (establishing the timeline and content of a NOD and explaining that an
unremedied NOD will lead to denial of the application).

A.    **The Affidavit's Unchallenged Portions Establish Probable Cause**

I begin with a summary of the unchallenged portions of the affidavit.  In the affidavit, Agent Miranda stated there was probable cause to believe Bussey committed several target offenses, including false statements, document fraud, wire fraud, and conspiracy.  The affidavit described Bussey's involvement in the H-2A visa application process.  The affidavit also described how Bussey and 14 other target subjects used email in alleged furtherance of the target offenses.

Regarding Bussey's involvement in fraudulent petitions, it is undisputed that he submitted three petitions that investigators flagged as potentially containing fraudulent information.  Doc. 637-1 ¶ 90.  It is also undisputed that DOS has refused 833 visas associated with his petitions because of inaccurate or incomplete information.  Id.

Agent Miranda described activity by 15 individuals, including Bussey, using the target email accounts and concluded that these individuals "used the email accounts identified . . . to submit fraudulent Petitions to DOL, DHS and DOS to commit the target offenses."  Doc. 637-1 ¶ 124.  The affidavit extensively described how these 15 individuals electronically filed fraudulent ETA 9142 forms and registered their emails to do so.  Each target individual's submissions had some form of deficiency, and each target individual had a history of submitting inaccurate or incomplete applications.  Each ETA 9142 described in the affidavit also bears striking similarities.  In each instance, the agent submitted an ETA 9142 requesting workers, supported by a letter from the grower or owner of the farm in question.  After investigation, agents determined that the farm owner never requested H-2A workers or that the letter requesting workers was fraudulent.  Doc. 637-1 ¶¶ 40–124.

Bussey argues the affidavit contained omissions and misstatements about the January 28, 2019 ETA 9142 submission and the circumstances surrounding it, but he does not dispute that he was the agent who submitted the ETA 9142 application or that he submitted it using his email account. Bussey similarly does not contest that the ETA 9142 listed 224 Meadow Road as a place of employment or that the actual property owner has never requested H-2A workers. Bussey argues the affidavit omitted regulatory information pertinent to prior visa denials and the NOD related to the January 28, 2019 ETA 9142, but he does not argue those denials did not occur or the NOD was not sent.

In sum, Bussey argues the misstatements and omissions contained in the affidavit created a false impression of culpability surrounding Bussey himself. But he does not argue that any of the events described in the affidavit did not occur, only that he bears no criminal responsibility for them. In doing so, Bussey answers the wrong question. The relevant inquiry in a probable cause determination is not focused exclusively on the individual Defendant's criminal culpability but, rather, whether the "the facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime." United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991).

The undisputed facts demonstrated that Bussey, acting as an agent, filed an ETA 9142 on January 28, 2019. Doc. 637-1 ¶ 91. That ETA 9142 possessed several deficiencies, resulting in an NOD. Id. ¶ 92. Agents later determined the 224 Meadow Road address listed on the ETA 9142 corresponded to a fixed site address, the owners of which had never requested H-2A workers. Id. ¶ 93. These facts are at least indicative of fraud. Bussey also had at least some history of submitting petitions with inaccurate or incomplete information, the essential facts of which he does not dispute. Even accepting Bussey's challenge, the affidavit would still support

19

probable cause to believe that evidence of *somebody's* criminal activity would be present in the relevant email account. In addition, at least 14 other suspected members of the same TCO all filed ETA 9142s with almost identical types of deficiencies, further supporting probable cause to believe that evidence would be found in the relevant email account. "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (citation and punctuation omitted). The evidence demonstrates, via reasonably trustworthy information, sufficient probable cause that evidence of the target offenses will be found in Bussey's email account.

**B.    The Affidavit's Alleged Misrepresentations or Omissions Do Not Undermine Probable Cause**

Bussey makes several challenges to the affidavit. To summarize, Bussey argues for the following corrections:

1.    The affidavit should have described the different ETA 9142 certification standards for a signing employer and a signing agent. The employer signs the application under penalty of perjury; the agent does not. The employer is ultimately responsible for the accuracy of the information in the application.

2.    The affidavit should have described how the 224 Meadow Road location may have originated from geographic coordinates in the letter from Cory Burnam and how Burnam used the employer listed on the application.

3.    The affidavit should have mentioned that a Notice of Deficiency is standard practice under federal regulations.

Even if the Court accepted all of Bussey's challenges—correcting the alleged misrepresentations and including the omitted facts—the affidavit would still support probable cause. In other words, even when considering Bussey's challenges, the challenges would not prevent a finding of probable cause. I address each challenge in turn.

### 1.    The ETA 9142 certification.

Bussey's contentions about misrepresentations and omissions related to the January 28, 2019 ETA 9142 application do not undermine probable cause.  Bussey is correct that the affidavit inaccurately described the ETA 9142's penalty of perjury clause.  The employer's certification is made subject to penalty of perjury, while the agent's certification is not.  Thus, Bussey has identified a misrepresentation.  However, even if the affidavit were corrected to state that the employer signs a certification under penalty of perjury and the agent does not, this would still not undermine probable cause.

Although the agent does not sign the ETA 9142 application under penalty of perjury, the agent expressly certifies that "to the best of [his] knowledge the information contained [in the ETA 9142 application] is true and correct."  Doc. 637-2 at 32.  This means Bussey affirmatively certified to the United States Department of Labor that all the information contained in the January 28, 2019 ETA 9142 was "true and correct" to the "best of [his] knowledge."  Id.  Bussey suggests that he bears *no* responsibility for the truth of the information in the application because the employer takes "full responsibility" for the accuracy of information and certifies under penalty of perjury.  Id. at 7–8.  Bussey's argument is unconvincing.  The threat of perjury penalties highlights the importance of the certification for the employer, but it does not diminish or eliminate the agent's role.  The agent affirmatively certifies that the information contained in the application, without limitation, is true and correct to the best of his knowledge.  That certification is meaningful.

Bussey also underplays the rest of the agent's certification.  An agent affirmatively certifies that knowingly furnishing false information "is a felony punishable by a $250,000 fine or 5 years in a federal penitentiary or both (18 U.S.C. 1001)."  Doc. 637-2 at 32.  If an agent

furnishes false information in an ETA 9142, he may not have been subject to penalty of perjury, but he would have committed a felony.[10]  The affidavit—if corrected—would still show that Bussey certified the information in the January 28, 2019 ETA 9142 application was true and correct, and it would provide factual statements showing that some of the information in that application was incorrect.  The corrected affidavit would still show that an agent could still bear serious criminal consequences for lying on the form but would clarify only an employer could be subject to penalty of perjury.  Thus, even if corrected, this portion would support a finding of probable cause.

### 2.    *The 224 Meadow Road location.*

Bussey raises four challenges related to the 224 Meadow Road worksite identified in the affidavit.  First, Bussey argues the affidavit fails to explain that 224 Meadow Road was only 1 of 9 worksites listed on grower Cory Burnam's letter and 1 of 21 worksites listed on the ETA 9142 itself.  Doc. 637 at 8.  Second, Bussey asserts that GPS coordinates in the letter correspond to a location 0.3 miles away from 224 Meadow Road and the affidavit did not acknowledge this.  Id.  Third, Bussey claims the affidavit failed to fully describe Burnam's letter, which showed that the letter was signed by the employer, not Bussey.  Id. at 12–13.  Finally, Bussey argues the affidavit failed to disclose email and phone communications between agents and Cory Burnam, in which Burnam only described dealings with the employer, and not Bussey.  Id.

### (a)    *Failure to describe other worksites.*

If the affidavit had mentioned that the ETA 9142 listed 21 worksites and Burnam's letter listed 9—as Bussey contends it should have—probable cause would not be materially affected.

---

[10]    It would also be incorrect to say that agents are never subject to a perjury conviction for making false statements.  Bussey concedes that Form I-129 requires the agent to sign a penalty of perjury clause.  Doc. 637 at 7 n.5 (referring to Doc. 637-2 at 9).

Bussey's argument here appears to be as follows: If agents visited the other locations listed on the documents and there were no problems at sites, it would demonstrate that any problem with 224 Meadow Road was likely an innocent mistake.[11]  But Agent Miranda's affidavit made no claim about any other sites.  The alleged problems with the 224 Meadow Road site would still exist even if there were no problems with any other site.  At most, inclusion of these new facts would show the ETA 9142 was for a number of sites, at least one of which was suspicious to investigators.  While investigation of those locations might (or might not) reveal that some sites were legitimate, the mere fact other sites existed is inconsequential.

In addition, the 224 Meadow Road worksite would not lose its significance just because it was one of several worksites listed on the ETA 9142.  Investigators uncovered facts about the 224 Meadow Road worksite that were similar to the problems with other applications submitted by other members of the alleged TCO.  For example, Sylvia Williams, acting as an agent, submitted an ETA 9142 requesting 112 workers and included 107 Buckhead Road, Baxley, Georgia, as the worksite.  Agents later determined, not only did the farm not exist, the 107 Buckhead Road address was also not listed in any county records.  Doc. 637-1 ¶¶ 66–73.  Abbie-Marie Musgrove submitted an ETA 9142 requesting 74 workers, supported by a letter on behalf of Hopkins Farms and signed by Carroll Hopkins.  Agents interviewed Carroll Hopkins, who stated he "has never filed for H-2A workers."  Id. ¶¶ 49–51.  Investigators had an almost identical experience when investigating 224 Meadow Road.  Even if the affidavit explained that

---

[11]     Bussey does not clearly explain why the other worksite information would have impacted probable cause.  But he does question whether investigators visited the other worksites, and he suggests that the sheer number of other worksites would have diminished the importance of 224 Meadow Road.  At the hearing, for instance, counsel for Bussey stated, "[I]t is just sort of shocking to me that you've got nine addresses and they're relying on one . . . that . . . the GPS coordinates are different from the physical address."  Doc. 1133 at 33.

224 Meadow Road was one of many worksites, it would not diminish the importance of the undisputed facts related to the investigation of that worksite.

      (b)    *The discrepancy between the GPS coordinates and address for 224 Meadow Road in Burnam's letter.*

Bussey claims the affidavit should have described the discrepancy between the GPS coordinates in Burnam's letter and the corresponding address in the ETA 9142 because it would have demonstrated there was a mistake. This argument is unconvincing. First, Bussey has not shown that the discrepancy was a mistake. Bussey claims the GPS coordinates on Cory Burnam's letter did not line up precisely with 224 Meadow Road, but he does not dispute that the physical 224 Meadow Road address was listed on both Burnam's letter and Bussey's ETA 9142. The ETA 9142 and the letter expressly identified "224 Meadow Road" as a worksite. Even if the GPS coordinates correspond to a nonexistent address 0.3 miles from the 224 Meadow Road address, this does not create an issue with the affidavit. There is simply no evidence that the discrepancy between the GPS coordinates and the street address was a mistake. Furthermore, Bussey has presented no evidence there was some alternative legitimate address that would have resolved the mistake.

Even assuming there was a mistake on the ETA 9142 or on the letter, Bussey fails to show that including information about the discrepancy in the affidavit would have undermined probable cause. At most, the affidavit would have stated something akin to: "The GPS coordinates provided by Burnham do not appear to correspond directly to 224 Meadow Road." But even with that addition, the ETA 9142 would still have requested workers for a nonexistent worksite. The application would still identify 224 Meadow Road as a worksite address. The owner of 224 Meadow Road still would not have requested any laborers. Indeed, if the GPS coordinates were inconsistent with the street address, that inconsistency would have made the

application more suspicious, not less.  The burden under <u>Franks</u> is on the defendant to demonstrate an alleged omission would have prevented a finding of probable cause.  <u>United States v. Lebowitz</u>, 676 F.3d 1000, 1010 (11th Cir. 2012) (citation omitted).  Bussey has failed to meet that burden with respect to the discrepancy between the GPS coordinates and the 224 Meadow Road worksite address.[12]

> (c) *Failure to describe Burnam's letter and investigators' contacts with Burnam.*

Bussey argues the affidavit should have described a letter that was attached to the January 28, 2019 ETA 9142 application and should have described investigators' contacts with Burnam.  As explained below, these facts, even if they had been included in the affidavit, would not negate probable cause.

The January 28, 2019 ETA 9142 application was supported by Burnam's letter that identified various worksites.  Doc. 637-4.  The letter purported to be a "fully executed work contract agreement" between the grower, Burnam, and the employer (identified by the initials "N.A.").  <u>Id.</u>  The letter is signed by Burnam and N.A.  The letter identified nine worksite locations by GPS coordinates and by street addresses.  The first worksite is 224 Meadow Road.  The letter was mentioned in Agent Miranda's affidavit, but it was not described in detail.  Doc. 637-1 ¶ 91.

Bussey fails to explain why the letter should have been described in more detail or why more detail would have undermined probable cause.  Doc. 637 at 8.  Ostensibly, Bussey argues

---

[12]    Additionally, alternative, innocent explanations for conduct do not negate probable cause.  <u>See</u> <u>United States v. Welch</u>, Case No. CR410-159, 2011 WL 3911113, at *4 n.7 (S.D. Ga. Aug. 18, 2011) ("[A] probable cause assessment deals in *probabilities*, not certainties, and there is no requirement that a probable cause finding rule out all such innocent explanations") (emphasis in original) (first citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); then citing <u>United States v. $24,484.00 in U.S. Currency</u>, 389 F.3d 1149, 1160 (11th Cir. 2004)).

that the letter would have shown that he (Bussey) relied exclusively on information provided by the grower and the employer when identifying the worksite.[13]  If this is Bussey's intended argument, it is unconvincing.  The letter is a two-page, primarily handwritten document that includes a list of worksites and the grower and employer's names and signatures.  This information is entirely consistent with the body of the ETA 9142 application that Bussey submitted that led to the investigation of 224 Meadow Road.  The investigation ultimately supported probable cause to believe that Bussey was participating in the TCO.  Additional facts about Burnam's letter would not have undermined probable cause in any way.

As to investigators' contacts with Burnam, Bussey points to an investigator's case notes that show Burnam described his interactions with N.A. (the employer), but Burnam did not mention any contact with Bussey.  See Doc. 637-3.  According to Bussey, these notes show "that all of [Burnam's] discussions had been with the employer, not Mr. Bussey."  Doc. 637 at 12–13.  Bussey makes too much of the investigator's case notes.  The notes do not show that Burnam did not meet with or talk with Bussey.  Nor do the notes show that "all" of Burnam's conversations had been with the employer.  Rather, the notes describe Burnam's account of a few communications between Burnam and the employer and nothing more.  Bussey fails to show that a description of the investigator's contacts with Burnam in the affidavit would have impacted probable cause in any way.

Ultimately, Bussey has not made a substantial showing that any omissions or misrepresentations related to the ETA 9142 itself were necessary to a finding of probable cause.

---

[13]     It may be that Bussey believes the letter bolsters his point about the discrepancy in the 224 Meadow Road address and the GPS coordinates.  See Doc. 936 at 9.  It does not.  As explained above, the letter itself does not suggest any "mistake" or who was responsible for such a "mistake."  It is merely a list of coordinates and addresses.

### 3.    *The NOD.*

Bussey argues the affidavit should have explained that federal regulations establish the NOD process and NODs are "standard practice."  Doc. 637 at 10.  Bussey's argument appears to be that, although several hundred visas associated with his petitions had been denied, there is no probable cause because the regulations contemplate a deficiency and cure process.  He makes the same argument regarding the NOD.  Because the regulations expressly provide for an NOD process, Bussey claims there is "nothing unusual" about these facts.  Id. at 10–11.

Bussey's argument is unconvincing for several reasons.  First, Bussey has not identified an omission of fact for the Court to consider.  Instead, he contends the affidavit should have explained that an NOD is "standard practice."  Bussey is merely arguing the affidavit should have included a favorable characterization of the NOD process.  Bussey cites no authority suggesting that a warrant application is required to provide favorable characterizations of a regulatory scheme.  Additionally, Bussey has not shown that NODs are "standard practice."  Bussey states the regulations provide for the NOD process, but he fails to offer any information about how those regulations are actually applied.

In addition, Bussey does not explain how this "omission" impacts probable cause.  Agent Miranda stated in the affidavit that Bussey has filed three fraudulent petitions and DOS has refused 833 visas associated with Bussey's petitions.  Doc. 637-1 ¶ 90.  Agent Miranda also stated the NPC emailed Bussey an NOD and Bussey responded with corrections to the January 28, 2019 ETA 9142.  Id. ¶ 92.  These are all undisputed facts that show a pattern of defects in Bussey's petitions strikingly similar to defects in other target subjects' petitions.  These undisputed facts would remain in the affidavit, even if the Court made Bussey's requested changes.

Bussey's argument also conflates direct personal criminality with probable cause. "Innocent behavior frequently will provide the basis for a showing of probable cause" because such a showing only requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). Indeed, alternative, innocent explanations for conduct do not negate probable cause. See United States v. Welch, Case No. CR410-159, 2011 WL 3911113, at *4 n.7 (S.D. Ga. Aug. 18, 2011) ("[A] probable cause assessment deals in *probabilities*, not certainties, and there is no requirement that a probable cause finding rule out all such innocent explanations") (emphasis in original) (first citing Illinois v. Gates, 462 U.S. 213, 238 (1983); then citing United States v. $242,484.00 in U.S. Currency, 389 F.3d 1149, 1160 (11th Cir. 2004)). While defects in ETA 9142 applications may not be criminal on their own, the defects may still support a finding of probable cause to believe a target is engaged in criminal conduct. Facts about Bussey's deficient applications support probable cause regardless of whether those deficiencies were remedied through the NOD process. The Court's probable cause determination would not change if the affidavit were corrected to include a favorable characterization about the federal regulations and the NOD process.

Ultimately, Bussey has not made a substantial showing that the challenged statements and omissions were essential to the probable cause determination. Even if the challenged statements in Agent Miranda's affidavit were edited to address each of Bussey's particularized

28

concerns, the affidavit would still support probable cause.  Therefore, Bussey's Motion to

Suppress and his request for a <u>Franks</u> hearing should be denied.[14]

Even considering all of Bussey's challenges together, and how all the challenges

combined would impact the facts contained in the affidavit, Agent Miranda's affidavit would still

support a finding of probable cause.  To be clear, Bussey has made some valid challenges to

inaccuracies within the affidavit.  For example, Bussey correctly points to issues with statements

related to the agent certification standard.  Even so, most of Bussey's challenges do not identify

any material omissions or misrepresentations in the affidavit and, instead, merely ask for a better

characterization of the evidence.  Those challenges do not undermine probable cause.

Furthermore, the undisputed aspects of the affidavit show that Bussey filed petitions by email

that investigators had reason to believe were fraudulent.  The suspicious aspects of Bussey's

petitions were nearly identical to fraudulent petitions filed by other members of the TCO.  Thus,

even considering all of Bussey's challenges together and in conjunction with all of the

unchallenged statements, Bussey has not shown that Agent Miranda's affidavit failed to establish

probable cause.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant Bussey's

request for a <u>Franks</u> hearing and **DENY** Defendant Bussey's Motion to Suppress the August 14,

2019 Microsoft Search Warrant.

---

[14]     I conducted a provisional <u>Franks</u> hearing on this Motion.  Doc. 1133 at 77–195.  Kelly Linemann, an assistant special agent with the DOL, provided testimony.  <u>Id.</u> at 78.  Though Agent Miranda signed the affidavit, Agent Linemann drafted much of the affidavit.  <u>Id.</u> at 82–85.

It is not necessary to consider the evidence taken during the provisional <u>Franks</u> hearing. Defendant Bussey has not made a substantial showing that any challenged statement or omission was essential to probable cause.  Any testimony showing agents acted recklessly or deliberately would not change this determination.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED**, this 10th day of February, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA