UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Indictment No: |
| vs. ) | 5:21-cr-009-20 |
| ) | |
| BRETT DONAVAN BUSSEY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT BUSSEY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING HIS NOVEMBER 16, 2021, SEARCH OF 410 WEST 6th STREET, TIFTON, GEORGIA, AND COMPUTERS AND ELECTRONIC DEVICES**

Brett Bussey files this, his Objections to the Magistrate Judge's Report and Recommendation Denying his Motion to Suppress the November 16, 2021, Search Warrant of 410 West 6th Street, Tifton, Georgia and for Computers and Electronic Devices, doc # 1251, and shows this Court the following:

### I.    Standard of Review.

A district court considers de novo any objection to a Magistrate Judge's Report and Recommendation. "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

The district court conducts a careful and complete review of a Magistrate Judge's Report and Recommendation. *United States v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however,

1

depending on whether there are objections to the Report and Recommendation. The district judge must "make a de novo determination of those portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting a complete and careful review of the Report and Recommendation, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732.

## II. Procedural History.

Mr. Bussey moved to suppress the evidence seized from the search for his home, computer, and electronic devices. Doc # 694. The government applied for this search warrant after the Microsoft warrant, doc # 637, and after the wiretaps. Doc # 651. The government responded, doc # 886, and Bussey filed a reply. Doc # 941. A hearing was held on the motion. Doc. 1133.

On April 4, 2025, the Magistrate Judge Recommended that this Court deny Bussey's Motion to Suppress and the request for a *Franks* hearing. Doc # 1251. Bussey filed an Unopposed Motion for Extension of Time in Which to File Objections, doc # 1252, which was granted, doc # 1254, giving him until May 2, 2025, in which to file objections.

These Objections timely follow.

Bussey does not challenge in these Objections the Magistrate's finding that the warrant application sufficiently incorporates the supporting documentation,

doc # 1251, p. 15-18, nor does he challenge the Magistrate's finding that the warrant was sufficiently particularized. *Id.* at 18-30.

### III. Argument and Citation of Authority.

#### A. The Magistrate Judge Erred in Concluding that the Affidavit's Unchallenged Portions Establish Probable Cause.

The Magistrate first analyzed the second *Franks* element – whether the affidavit would still support probable cause when corrected to address the alleged misrepresentations and omissions. Doc # 1251, at 35-37. The Magistrate cites the following "unchallenged portions of the affidavit" to conclude the affidavit establishes probable cause.

1. That a federal grand jury had returned an indictment charging Bussey with conspiracy to engage in mail fraud, forced labor, and money laundering. *Id.* at 35.

2. That co-defendant Facundo resided with Bussey at target location 12. *Id.*

3. That it is undisputed that defendants and target subjects worked with Bussey in the H-2A process or were associated with Bussey in some way. *Id.*

4. That defendant Juana Carrillo and Bussey had a relationship where they spoke on the phone discussing an H-2A petition for a Tennessee farmer to harvest marijuana under the pretense of harvesting tomatoes and that Bussey filed 2 petitions for a Tennessee farmer to harvest tomatoes. And

3

that Carillo paid Bussey consistent with payments by a farmer labor contractor to obtain H-2A workers. *Id.* at 35-36.

5. That the affidavit concluded that Carrillo was responsible for multiple fraudulent petitions and moved workers illegally. *Id.* at 36.

6. That Bussey submitted 8 petitions that investigators flagged as "potentially" containing fraudulent information. *Id.*

7. That DOS rejected 833 visas associated with his petitions because of inaccurate or incomplete information. *Id.*

8. That Bussey submitted H-2A petitions from Target Location 12. *Id.*

9. That he worked for Inez Strickland who was a target subject and filed H-2A petitions while working for her. *Id.*

10. That he discussed with defendant Canela the possibility of housing workers illegally and that filed petitions to that end. *Id.* And,

11. That the affiant concluded Bussey filed 3 ETA 9142 applications that agents determined to be fraudulent. *Id.*

### 1. The Probable Cause Standard.

The Fourth Amendment prohibits the issuance of a search warrant in the absence of probable cause to believe that items of evidentiary value are in a specific place. This safeguard is necessary to protect a person's interest in the privacy of his home and personal possessions from unjustified governmental intrusion. *O'Rourke v. Hayes*, 378 F.3d 1201, 1209 (11th Cir. 2004), citing *Stegald v. United States*, 451 U.S. 204, 213 (1981). While the concept of "probable cause" is not

susceptible to precise definition, the Supreme Court has held that a finding of probable cause may be premised upon an affidavit of a law enforcement officer if the facts and circumstances alleged establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 338 (1983). First, it must be shown that there are reasonable grounds to believe a crime has been committed; second, there must be reliable and trustworthy evidence to show that evidence of the crime is in a particular place. See *United States v. Martin*, 297 F.3d 1308, 1314-15 (11th Cir. 2002); *United States v. Carlson*, 236 F.Supp.2d 686, 688 (S.D. Tex. 2002). The mere fact that criminal activity may have taken place does not provide the necessary probable cause to, for instance, search a suspect's home for evidence. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).

In deciding whether to sign a search warrant, the issuing judge is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Jiminez,* 224 F.3d 1243, 1248 (11th Cir.2000). Affidavits are not interpreted in a hyper technical manner; rather a realistic and commonsense approach is followed to encourage recourse to the warrant process and to promote deference traditionally given to magistrates in their probable cause determination. *United States v. Miller,* 24 F.3d 1357, 1361 (11th Cir.1994).

## B. The Unchallenged Portions of the Affidavit Do Not Establish Probable Cause.

Respectfully, the Magistrate takes the affiant's conclusions as fact. In *Franks*, the Supreme Court made the point that a warrant must contain "particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *United States v. Franks*, 438 U.S. 154, 165 (1978). The *Franks* Court discussed an example—where probable cause was premised on an informant's tip. There, it was not sufficient for the agent just to report that he concluded that the informant was reliable. "If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *Id*. Bussey addresses each of the unchallenged portions of the affidavit set forth above in turn.

First, the Magistrate errs in concluding that the return of an indictment establishes probable cause for the search for Bussey's residence, computers, and electronic devices. The Magistrate cites no authority for that proposition and the undersigned has found no case law providing that a warrant issued after the return of an indictment establishes probable cause for a search. Candidly, the Westlaw search is complicated by the fact that almost every case discussing a search also contains the word indictment. But whether a grand jury found probable cause to return an indictment does not bolster an affidavit lacking in facts establishing probable cause.

Second, the fact that co-defendant Facundo resided with Bussey at the target location similarly provides no fact aiding in the probable cause determination. Tellingly, Facundo was under indictment for two and a half years before the indictment against her was dismissed in June 2024. Doc # 1042.

Third, the Magistrate's statement that defendants and target subjects worked with Bussey in the H-2A process, or were associated with Bussey in some way, does not aid in the probable cause determination. Without providing any factual support, the affidavit avers that Juana Carrillo, Donna Rojas, and Margarita Cardenas assisted Bussey in filing fraudulent petitions, 694-3, ¶¶43, 44, 45, that he is "associated" with Juan Campos, and Rosalva Martinez, ¶¶46, 47, 45, is an "associate" of 2 subjects, who remain unindicted more than 3 years later, ¶¶50, 57, 60, that the now dismissed Facundo assisted in filing fraudulent petitions, ¶51, that he filed fraudulent petitions for Gumara Canela, ¶52, and is an "associate" of Carla Salinas. *Id.* at ¶54. Those conclusory characterizations do not provide factual support for finding probable cause.

Fourth, regarding the marijuana/tomato wiretap intercept, ¶199, the affidavit does not further identify the petitions. But this averment does weigh against Bussey in a probable cause determination. It does not however, standing alone, or in combination with paragraph 10 below, establish probable cause for the warrant.

To the extent that the allegations rely on information contained on a wiretap of Bussey's phone, Bussey has moved to suppress all evidence obtained from the

7

wiretap. Doc # 651, 1231. If the Court grants that motion, it would remove these allegations from the probable cause analysis. *See* 18 U.S.C. §2518(10)(a); *Wong Sun v. United States*, 371 U.S. 471 (1963).

Regarding the payment by Carillo, the Magistrate acknowledges that the affidavit states that the payments are consistent with payments to someone assisting a farm labor contractor in submitting petitions. Doc # 1251, p. 36-37. This averment then only shows that Bussey received modest payment to do his job of assisting in the filing of petitions and does not help establish probable cause.

Fifth, while the Magistrate states that the statements about Carillo were undisputed, that is not accurate. Bussey did address Carrillo and paragraphs 200-207 of the affidavit in his moving papers but referred to Jennifer Rangel by her initials as J.R. since she was unindicted. Doc # 694, at 10-13. And, that discussion does contest the factual representations regarding two of the petitions submitted by Bussey that are set forth below. Thus, the Magistrate errs in concluding that the affidavits conclusions about Carrillo are uncontested.

Sixth, as to the 8 petitions that investigators flagged as "potentially" containing fraudulent information – that is nothing more than speculation and falls far short of the facts that must undergird probable cause. Conclusory allegations of a federal agent without a factual foundation do not support probable cause. *United States v. Lewis*, 81 F.4th 640, 646-47 (6th Cir. 2023). In *Franks*, the Supreme Court made the point that a warrant must contain "particular facts and circumstances underlying the existence of probable cause, so as to allow the

8

magistrate to make an independent evaluation of the matter." *United States v. Franks*, 438 U.S. 154, 165 (1978). The affiant's speculation that 8 petitions potentially contained fraudulent material is not the factual foundation upon which probable cause is built.

Seventh, as for the Magistrate's reliance on the DOS refusal of 833 visas, doc 1251, at 36 – the affiant does not suggest that is an indicium of fraud. In fact, the affiant is careful to distinguish only that – those 833 visas were refused because of "inaccurate or incomplete information." *Id.* at ¶ 90. As shown below, the Notice of Deficiency process outlined at 20 C.F.R. 655.141 (a) contemplates the return of applications with errors or inaccuracies. And the single 9142 identified in the affidavit sought certification for 250 workers, doc # 694-3, ¶¶ 224-28, almost 30 percent of the total refused visas.

Eighth, Bussey admits that he submitted H-2A petitions from target location 12. See Doc # 1251, at 36. That fact does not support the necessary finding of probable cause for searching his residence.

Ninth, Bussey worked for Inez Strickland, who was a target subject. *Id.* Again, in the three and a half years since indictment, Strickland has never been charged with a crime. That she was a target of the investigation does not contribute to the probable cause determination.

Tenth, regarding the statement that Bussey discussed with defendant Canela housing workers illegally and filed petitions to that end. The affidavit speaks of Bussey and a target subject who was never indicted. See doc # 694-3, ¶240. The

9

affiant states that Bussey told that target that he "would be filing" a petition for Canela in a nominee name, not that he did file such a petition. *Id.* Candidly, the fact that Bussey, Canela, and an unindicted target, W.G., spoke about housing workers in a trailer than did not have the required number of stoves, and had structural defects, weighs against Bussey in a probable cause determination. It is not, however, either standing alone or in combination with other undisputed facts sufficient to establish probable cause for the warrant.

Finally, the agent's "conclusion" that Bussey filed "fraudulent" petitions, doc # 1251, at 36, does nothing to tie Bussey to the conduct upon which that conclusion was based. It does not, therefore, weigh in the probable cause analysis.

As demonstrated, the undisputed facts do not support the finding that there is a fair probability that evidence of a crime will be found at Bussey's residence.

### C. The Magistrate Erred in Concluding that the Agent's Reckless Misrepresentations and Omissions Do Not Undermine Probable Cause.

#### 1. Bussey's Business Relationship with Defendant Carrillo.

The Magistrate states that Bussey does not explain how the agent's omission of the provision of information on Form ETA 9142 and deficiency notices would have impacted probable cause. Doc # 1251 at 38.

The agent disclosed that Bussey obtained money from Carillo, a farm labor contractor, which was consistent with submitting H-2A documents. Doc # 694- 3, ¶ 200. While the affidavit speaks to the H-2A approval process, ¶¶ 9-23, it does not discuss the role of an agent, which was Bussey's job. In a recitation that spans 15

10

paragraphs and almost five pages (pages 4-8), the affidavit relays only three pieces of information about an agent:

- An employer and agent (if applicable) must sign an ETA 9142 "under penalties of perjury" before it is forwarded to DHS for final approval. (¶ 17)

- After DHS certifies the ETA 9142, the employer must submit a DHS Form I-129 for final adjudication, and both the employer and agent must sign "under penalties of perjury." (¶ 18)

- Employers, agents, attorneys, or recruiters cannot collect money from foreign nationals for fees associated with the program. (¶ 21)

What the affidavit does not disclose is the fact that agents are different from employers and labor contractors. An agent is "authorized to act on behalf of an employer for temporary agricultural labor certification purposes." 20 C.F.R. §655.103(b). But an employer is one who "[h]as an employment relationship (such as the ability to hire, pay, fire, supervise, or otherwise control the work of employee) with respect to an H-2A worker." *Id.* An employer also encompasses any "person on whose behalf an *Application for Temporary Employment Certification"* is filed. *Id.* An H-2A labor contractor "meets this definition of employer" but is not a "fixed-site employer [or] an agricultural association," and "who recruits, solicits, hires, employs, furnishes, houses, or transports any worker. . ." *Id.* An H-2A labor contractor must "comply with all the assurances, guarantees, and other requirements contained" in the regulations. 20 C.F.R. § 655.132. Agents,

11

on the other hand, must provide a copy of the agency agreement when filing an application and (if required by statute) identify "the specific farm labor contracting activities he is authorized to perform." 20 C.F.R. § 655.133.

While the agent summarizes the H-2A program, including Form ETA 9142, despite claiming expertise in investigating similar matters, the affiant misrepresents the signing burden of the agent in paragraph 17, omits the relative responsibilities of the employer and the agent in the provision of information, and omits the fact that Notices of Deficiency are part of the application process.

The Magistrate erroneously concludes that because Bussey certifies the information contained in the application is true and correct, that even if corrected, the misrepresentation would not undermine probable cause because the petition identified, IOE8344252037, was determined by the agents to be fraudulent. Doc # 1251, at 39. Yet combining the factual misrepresentations and omissions above demonstrate that the agent was at the very least reckless in his factual recitation, and if corrected, those facts and omissions would defeat the showing of probable cause.

The Magistrate writes that Bussey does not dispute the conclusion that Rangel was a nominee. Doc # 1251, at 39. The agent's conclusion that Rangel was a nominee petitioner is fanciful. She signed the petition, doc # 694-5, p. 8, 14, provided her Farm Labor Contractor Certificate of Registration, p. 25, her IRS Employer Identification Number, p. 26, and a copy of the signed Agent Agreement was attached as well. P. 30.

Rangel certified under penalty of perjury that the substance of the petition was correct. The agent (Bussey) certified that he prepared it on behalf of the labor contractor, who reviewed the petition and informed him that it was correct. The affidavit discussed the Rangel petition at length, doc # 694-3, ¶¶ 201-06 but avers only that Bussey got paid to file a petition. *Id.* at ¶ 207. That was what agents like Bussey do, but despite an extensive discussion of the ETA 9142 filing process, The affiant never explains the respective certifications made by agents and employers. The Magistrate erred in finding that properly framing the respective factual roles played by agents in the process, which undermines probable cause.

### 2. Prior Refused Visas.

Bussey incorporated his arguments regarding the prior refused Visas from his Microsoft Motion to Suppress. Doc. 694 at 13, adopting arguments from doc # 637 at 10-11, 13. The Magistrate incorporated his analysis regarding that argument at doc # 1251 at 40. Bussey, therefore, incorporates his arguments from his Objections to the Report and Recommendation Denying his Motion to Suppress the Microsoft Search Warrant. Doc # 1237 at 8, 16-19.

### 3. and 4.   The CS's Criminal History and Bussey's Meetings with the CS.

Bussey incorporated his arguments regarding the CS's criminal history and his meetings with the CS from his Motion to Wiretap. See doc. 694 at 14, adopting arguments from doc # 651 at 11-19. The Magistrate incorporated his analysis regarding that argument at doc # 1251 at 40-41, adopting the rationale from doc #

13

1202 at 31-32, and 32-42. Bussey, therefore, incorporates his arguments from his Objections to the Report and Recommendation Denying his Motion to Suppress Wiretap. Doc # 1231 at 8, 16-26.

### 5. The August 11, 2021, Petition.

On another occasion Bussey submitted paperwork on Rangel's behalf seeking 80 workers to harvest peanuts and in a peanut mill or plant onions, and that 73 workers entered the United States under the petition. Doc # 694-3 ¶¶ 224-25. But interviews with the owner of J.D.P. & G. indicated that the workers never came, that Rangel would not return his calls, and that he asked his long-time friend Bussey about the status of those workers. *Id.* ¶ 226. Bussey gave several explanations until he quit answering the owner's calls. *Id.* When agents talked to the owner of the designated hotel for housing, the hotel owner relayed his conversations with *Rangel* – not Bussey – and told agents that he would "discuss the delay again with Rangel." *Id.* ¶ 227. This led Agent Linemann to conclude that the petition "filed by Defendant Bussey is fraudulent because the workers did not stay or work at the approved locations." *Id.* ¶ 228.

Bussey demonstrated the following: *First*, if an agent submits an ETA 9142 electronically, he provides a printed ETA 9142 "signed by both the United States employer and their agent/preparer (if applicable) under penalties of perjury" before the form "can be forwarded onto DHS for final approval." *Id.* ¶ 17. Here, Bussey submitted an electronic ETA 9142 on August 11, 2021, and mailed a written

14

form ETA 9142 on September 1, 2021. *Id.* ¶ 224. The certification that Bussey, as agent, signed on this petition stated:

> By my signature, I certify, swear, or affirm, under penalty of perjury, that I prepared this petition on behalf of, at the request of, and with the express consent of the petitioner or authorized signatory. The petitioner has reviewed this completed petition as prepared by me and informed me that all of the information in the form and in the supporting documents is complete, true, and correct.

Doc # 964-5 at 8.

The affidavit does not disclose that between the electronic and paper filings, the Department of Labor received a letter dated August 23, 2021, from Rangel responding to a Notice of Deficiency received from the DOL. Doc # 964-6. By regulation, if a Form 9142 is "incomplete, contains errors or inaccuracies, or does not meet the requirements set forth in this subpart," the agency will notify an employer within 7 business days of receipt and inform the employer of deficiencies via a Notice of Deficiency. *See* 20 C.F.R. §655.141. There is nothing unusual or illegal about this process; it is what the regulations provide.

In any event, Rangel's letter identified the deficiency and a modification followed:

**Deficiency #1: Agricultural Labor or Services**

> As it is unclear work will take place on a farm and at least 50% of the crops being processed were cultivated by the fixed-site grower, the job

opportunity does not appear to satisfy the definition of agricultural labor in 26 U.S.C. §3121(g). The employer has therefore failed to establish its application as eligible for the H-2A program under the IRC definition of agricultural labor.

**Modification #1:**

The employer grants permission to Chicago NPC[1] to remove Jeff Davise Peanut & Grain from its application. . .

*Id.* Rangel's letter provides additional information about onion growers. *Id.* Her letter resulted in certification by the DOL on August 30, 2021. Doc # 694-7 at 18.

In other words: J.D.P. & G. – the subject of ¶ 226 of the affidavit – had been removed at the *DOL's* direction after the electronic submission and before the written one. The affidavit says that the electronic application requested 80 workers "to work harvesting peanuts and in a peanut mill," but the "paperwork indicated that at R.F. and M.F. the requested workers would be planting onions and not peanuts." *Id.* ¶ 224 There is nothing nefarious about this change, especially since it was a change *made by Rangel at the DOL's direction*. The agent fails to disclose this fact in the affidavit.

The agent also concluded that that petition was "fraudulent" because "workers did not stay or work at the approved locations." ¶ 228. Workers did not "work at the approved locations" (i.e., the peanut mill) because the DOL said they

---

[1] "Chicago NPC" is the Chicago National Processing Center – the recipient of the letter.

could not. If they "did not stay" at "approved locations," even the affidavit places that lapse solely on Rangel. The agent also represents that a hotel manager told agents that Rangel reserved rooms and had not produced the guests because "the workers were running late" due to processing issues. Doc # 694-3, at ¶ 227. Bussey is not mentioned at all in this paragraph; the only conversations occurred between Rangel and the hotel manager.

Despite this substantial showing of a complete misunderstanding of the documents and process by the affiant, the Magistrate concludes that the affidavit demonstrates probable cause supposedly because Bussey participated in speaking with Miller. But Miller's farm was eliminated as a recipient of workers by Rangel in a process that had nothing to do with Bussey. So, it does not follow that the affidavit still demonstrates probable cause.

And, the Magistrate says that the absence of evidence of any contact between Bussey and the hotel owner does not demonstrate that Bussey was not involved with the hotel owner. That conclusion begs the question. The only facts in the affidavit about conversations with the hotel owner were discussions between Rangel and the owner.

The Magistrate Judge's conclusion that the agent's omissions, if corrected, would not impact on the probable cause determination is, therefore, error.

WHEREFORE, Mr. Bussey respectfully requests that based on all the reasons and authorities cited above, that this Court grant his Objections and overrule the denial of his Motion to Suppress the Search of 410 West 6th Street.

This 2nd day of May 2025.

                                        Withers Law Firm PC

                                        */s/Thomas A. Withers, Esq.*
                                        Attorney Bar Number: 772250
                                        Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that I have on this day served all the parties in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 2nd day of May 2025.

                                        Withers Law Firm PC

                                        <u>*/s/Thomas A. Withers, Esq.*</u>
                                        Attorney Bar Number: 772250
                                        Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com