# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

UNITED STATES OF AMERICA,

     v.

                     5:21-cr-9-20

BRETT DONAVAN BUSSEY,

       Defendant.

## ORDER

Defendant Brett Bussey moved to suppress wiretap evidence. Dkt. No. 651. The Magistrate Judge issued a Report and Recommendation that the Court deny Bussey's Motion. Dkt. No. 1202. Bussey filed Objections to the Magistrate Judge's Report and Recommendation. Dkt. No. 1231. After conducting an independent and de novo review of the entire record in this matter, the Court **CONCURS** with the Magistrate Judge's Report and Recommendation, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Bussey's Objections.

## BACKGROUND

The Government alleges in this case that a Transnational Criminal Organization ("TCO") illegally used the H-2A visa program for non-immigrant workers. The Government alleges that TCO members used the program to "smuggle foreign nationals . . . [and] make

money by exploiting these foreign workers and then laundering the illegal proceeds." Dkt. No. 1012 at 2.

On October 18, 2019, the Government filed an Application for Original Interception of Wire and Electronic Communications. Dkt. No. 885-1. The application sought permission to intercept wire and electronic communications of several Target Subjects through a phone bearing a number ending in -4465 ("Target Telephone 1" or "TT1") and used by Bussey. Id. at 2. The application concerned potential violations of 18 U.S.C. §§ 371, 1343, 1546, 1589, 1590, and 1592 (the "Target Offenses"). Id. at 3. The Government provided an affidavit in support of its application. Dkt. No. 651-1. The Court issued an Order authorizing interception of wire and electronic communications. Dkt. No. 885-2.

In his Motion to Suppress, Bussey argues that the affidavit supporting the wiretap application contained a series of misrepresentations and omissions. Dkt. No. 651 at 5. Without these misrepresentations and omissions, argues Bussey, the affidavit did not support probable cause to approve the application.[1] Id. at 19. Bussey argues these misrepresentations and omissions were reckless and he requests a Franks hearing.

The Magistrate Judge issued a Report and Recommendation that the Court deny Bussey's Motion to Suppress and his request for a

_____

[1] In the Motion, Bussey also argues that the Government did not adequately demonstrate that a wiretap was necessary. Dkt. No. 651 at 22. Bussey does not object to the Magistrate Judge's conclusions on the issue of necessity.

_Franks_ hearing for several reasons.  Dkt. No. 1202.  The Magistrate Judge concludes that, even if the alleged misrepresentations and omissions Bussey cited were removed, the affidavit would still support a finding of probable cause.  _Id._ at 20–22.  The Magistrate Judge examines each of the purported misrepresentations and omissions.  The Magistrate Judge concludes that Bussey did not make a substantial showing that any of the alleged misrepresentations or omissions undermined probable cause.  _Id._ at 22–42.

In his Objections, Bussey argues that the Magistrate Judge errs in three ways.  First, Bussey argues the Magistrate Judge incorrectly concludes that the unchallenged portions of the affidavit supported probable cause to approve the wiretap.  Dkt. No. 1231 at 3.  Specifically, Bussey argues that the unchallenged portions of the affidavit constitute unsupported conclusory statements that cannot be used to establish probable cause.  _Id._ at 3–7.  Next, Bussey argues that, contrary to the Magistrate Judge's recommendation, the affidavit's misrepresentations and omissions did, in fact, undermine probable cause.  _Id._ at 7–26.  Finally, Bussey argues that the Magistrate Judge does not address his argument that the affidavit did not sufficiently connect his phone (i.e., TT1) to criminal activity.  _Id._ at 26–27.

**DISCUSSION**

I.    **The Affidavit's Unchallenged Portions**

In his Objections, Bussey challenges the Magistrate Judge's conclusion that, even if all challenged portions of the affidavit were removed, the affidavit's unchallenged portions still established probable cause.  Bussey cites <u>Franks v. Delaware</u> for the proposition that "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter."  438 U.S. 154, 165 (1978).  Bussey argues that the unchallenged portions of the affidavit fail to meet this standard because they are "conclusory statements of the affiant" and do not establish probable cause.  Dkt. No. 1231 at 5.  As Bussey characterizes it, these statements include the affiant's assertions that: (1) the affiant believed there was probable cause to believe that Bussey committed the Target offenses; (2) three of Bussey's petitions contained fraudulent information; (3) the Department of State rejected 833 visas associated with Bussey's petitions due to inaccurate or incomplete information; and (4) Bussey was linked to other Target Subjects through TT1 and those Target Subjects committed Target Offenses.  <u>Id.</u> at 3-4.

A court authorizing a wiretap must "make a practical, common-sense decision about whether the totality of the circumstances indicate that there is probable cause that the sought-for evidence

will be obtained." United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990) (punctuation omitted) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The issuing judge's decision is entitled to "great deference . . . even in marginal or doubtful cases." Id. (citing United States v. Lockett, 674 F.2d 843, 845 (11th Cir. 1982)).  In reviewing the issuance of a wiretap, the Court should only determine if the issuing judge "had a substantial basis for concluding that probable cause existed." Id. (cleaned up) (quoting Gates, 462 U.S. at 238–39).

After reviewing the record, the Court concurs with the Magistrate Judge's view that the affidavit's unchallenged portions established probable cause.  The unchallenged portions of the affidavit are not mere conclusions, unsupported by any evidence but, rather, constitute sworn allegations that contributed to a finding of probable cause.  The affiant provided a detailed recitation of facts, supported by a variety of sources.  Dkt. No. 651-1.  As to Bussey, the affiant stated, "[A]gents determined that Brett Bussey submitted three petitions with fraudulent information.  In addition, DOS has refused 833 visas associated with Brett Bussey's Petitions because of inaccurate or incomplete information." Id. ¶ 42.  The affiant also linked TT1 to several other Target Subjects.  Id. ¶ 131.  These are specific factual circumstances, not unsupported conclusions.

Bussey argues separately that the State Department's refusal of visas is not an indication of fraud and that links between Bussey and other Target Subjects are not sufficient to establish probable cause. These arguments are largely repetitive of arguments Bussey makes in his brief supporting the Motion to Suppress. See Dkt. No. 651 at 5-6. The Magistrate Judge thoroughly considers these arguments and correctly rejects them. Dkt. No. 1202 at 30-31. I concur with the Magistrate Judge's analysis. A history of visa refusals, prior applications flagged for fraud, and the extensive phone contact between TT1 and other Target Subjects (many of whom allegedly committed Target Offenses) all support probable cause for a wiretap of TT1. Thus, the unchallenged, specific factual circumstances in the affidavit provided a substantial basis to find probable cause to authorize a wiretap.

## II.  Alleged Misrepresentations and Omissions

Bussey argues that the Magistrate Judge errs by concluding that alleged misrepresentations and omissions in the affidavit did not materially impact probable cause. The Court will address each of Bussey's enumerations of error in turn.

### A.    The ETA 9142 Certification

The affidavit included a description of Form ETA 9142, which is a temporary employment certification submitted to the Department of Labor. Dkt. No. 651-1 ¶¶ 28-29. The affiant stated

6

that both employers and their agents sign the ETA 9142 under penalty of perjury. Id. ¶ 31. The affiant explained that Bussey, as an agent, submitted an ETA 9142 electronically on January 28, 2019. Id. ¶ 43. Bussey argues in his Motion that this is a misrepresentation and that an agent does not sign under penalty of perjury. Dkt. No. 651 at 7-8 (referencing Dkt. No. 637 at 6).

The Magistrate Judge agrees with Bussey that the affiant's statement constituted a misrepresentation. Dkt. No. 1202 at 24. An agent does not sign an ETA 9142 under penalty of perjury, while an employer does. Id. However, the Magistrate Judge also concludes that this misrepresentation did not undermine a finding of probable cause. While an agent's certification for an ETA 9142 does not include a penalty of perjury clause, the agent still certifies the ETA 9142 and faces criminal penalties if he knowingly furnishes false information. Id. Therefore, the Magistrate Judge states that Bussey's signature on a potentially fraudulent ETA 9142 contributed to probable cause, regardless of whether the signature was under penalty of perjury. Id.

In his Objections, Bussey argues that the Magistrate Judge fails to address the differences between Form ETA 9142A-Appendix, which contains the penalty of perjury clause, and Form ETA 9142A, which does not. Dkt. No. 1231 at 8. Bussey argues that this is significant because an employer uses Appendix A of Form ETA 9142A to certify an application. Id. Bussey also argues that an

employer's certification in Appendix A is three pages long, is greatly detailed, and states that the employer takes "full responsibility for the accuracy of any representations made by my agent or attorney." Id. In contrast, the agent's certification is only one paragraph. Id. at 9. Bussey concludes that, when taken together, these "facts and omissions would defeat a showing of probable cause." Id.

Bussey's argument that the Magistrate Judge did not distinguish between the ETA 9142 and the Appendix is unconvincing. The Magistrate Judge accurately cites the certifications that both the employer and the agent sign. The fact that these certifications are found in the Appendix to Form ETA 9142A, rather than on From ETA 9142A itself, changes nothing about any material facts. The remainder of Bussey's Objection restates arguments he makes in the Motion to Suppress, and the Court concurs with the Magistrate Judge's analysis of those arguments. Bussey, as an agent, signed the ETA 9142A Appendix and subjected himself to potential criminal prosecution if he knowingly furnished false information. Bussey's signature on the application, while not under penalty of perjury, is still meaningful and contributes to a finding of probable cause.

### B.  The Address Listed on the ETA 9142

The affidavit stated that the ETA 9142 that Bussey submitted listed 224 Meadow Road, Alma, Georgia, as a worksite. Dkt. No.

651-1 ¶ 43.   The affidavit also stated that the ETA 9142 was accompanied by a letter signed by grower Cory Burnam, listing 224 Meadow Road as a work location.   Id.   The affidavit explained that agents went to 224 Meadow Road to ask the owner if she had requested H-2A workers.   The owner's husband stated that she had not.   Id. ¶ 45.

The Magistrate Judge identifies four challenges that Bussey raises to the affiant's discussion of 224 Meadow Road.   First, Bussey argues that the affidavit failed to explain that 224 Meadow Road was only one of 21 worksites listed on the ETA 9142.   Second, Bussey argues that the affidavit failed to explain that the letter from Burnam included GPS coordinates that correspond to a location 0.3 miles away from 224 Meadow Road.   Third, Bussey argues that the affidavit failed to disclose that Burnam's letter was signed by the employer and not by Bussey.   Finally, Bussey argues that the affidavit failed to describe email and phone communications between Burnam and government agents, in which there was no mention of Bussey.   The Magistrate Judge finds each of these arguments unconvincing.   Dkt. No. 1202 at 25-29.

In his Objections, Bussey largely reiterates the same arguments he makes in his Motion.   First, Bussey reiterates that the affidavit failed to explain that the ETA 9142 listed 21 worksites, not just 224 Meadow Road.   Dkt. No. 1231 at 9-10.   This Objection is not responsive to the Magistrate Judge's analysis.

The Magistrate Judge explains that "[t]he alleged problems with the 224 Meadow Road site would still exist even if there were no problems with any other site." Dkt. No. 1202 at 26. Bussey's re-urging of the same argument does not address the problems with the 224 Meadow Road worksite, and the Court concurs with the Magistrate Judge's analysis. Regardless of how many worksites were listed, agents investigated and identified a site listed on an application for H-2A workers but discovered the owner of that site did not request any H-2A workers. This fact supports probable cause to authorize the wiretap, and whether the application listed any other sites does not materially impact that conclusion.

Next, Bussey argues that the Magistrate Judge fails to appropriately address a discrepancy in the Burnam letter concerning the physical address of 224 Meadow Road.[2] Dkt. No. 1231 at 11. The Burnam letter that accompanied the ETA 9142 contained a list of worksite addresses. Those addresses were accompanied by GPS coordinates. Dkt. No. 637-4. Bussey argues, as he does in his Motion, that the GPS coordinates for "worksite 1" correspond to 246 Meadow Road, an address that apparently does not exist. Dkt. No. 1231 at 11-12. The Magistrate Judge addresses this argument and concludes that the GPS coordinates being slightly off

---

[2]   Relatedly, Bussey disputes the affiant's characterization of the document as a "letter" and argues it is a "fully executed work contract." Dkt. No. 1231 at 10. The characterization of the document is immaterial to the probable cause analysis. As the affidavit refers to the document as a "letter," the Court will continue to do so.

from 224 Meadow Road does not undermine probable cause. Dkt. No. 1202 at 26-27. Bussey argues, however, that "inserting the GPS coordinates supplied by Burnam returned a non-existent street address, but whose pin location is directly across the street from 224 Meadow Road." Dkt. No. 1231 at 12. Bussey argues that the failure to explain the disparity between the GPS coordinates and the street address undermines probable cause. Id.

It is unclear from Bussey's argument what omission he believes the affiant made. In any case, the Magistrate Judge explains that Bussey "does not dispute that the physical 224 Meadow Road address was present on both Burnam's letter and Bussey's ETA 9142. The ETA 9142 listed 224 Meadow Road as a worksite, as did the letter." Dkt. No. 1202 at 27. Therefore, it was reasonable for agents to rely on the two instances of the 224 Meadow Road street address, rather than the GPS coordinates in Burnam's letter. Bussey has not addressed this point.

The Court concurs with the Magistrate Judge's analysis. 224 Meadow Road was listed on the ETA 9142 and on the Burnam letter, agents conducted a site visit at that address, and agents found no evidence that H-2A workers had ever been requested there. These facts support a finding of probable cause, and Bussey's GPS argument does not allege a material omission to challenge them.

Finally, Bussey contends that the Magistrate Judge improperly discounts Bussey's argument about the content of Burnam's letter

and Burnam's contacts with government agents.  The Magistrate Judge concludes that none of the letter's content would have undermined probable cause if it had been described in the affidavit.  Dkt. No. 1202 at 28-29.  Bussey objects, arguing that the letter is properly a "fully executed work contract" signed by both Burnam and the employer, but not by Bussey.  Dkt. No. 1231 at 13.  Bussey also argues that investigators' case notes do not show any contact between Burnam and Bussey.  Id.

Bussey's argument appears to be that, had the affidavit mentioned that the letter was signed by Burnam and the employer, but not Bussey, probable cause would be materially lessened.  In addition, Bussey argues, had the affidavit mentioned that investigators' case notes do not indicate any mention of Bussey in their conversations with Burnam, that would also materially lessen probable cause.

Bussey's arguments are unconvincing.  These proposed alterations would, at most, show that Burnam and the employer signed the letter and that investigators had conversations with Burnam during which Bussey was not mentioned.  Thus, Burnam had contact with people other than Bussey.  These alterations do not in any way lessen probable cause to authorize a wiretap of TT1.  Therefore, Bussey has not shown that any alleged omissions regarding the Burnam letter would materially impact probable cause.

12

### C.   Bussey's Notice of Deficiency Letter

The affidavit stated that Bussey received a Notice of
Deficiency ("NOD") from the Department of Labor because the ETA
9142 he submitted "failed to provide proper documentation on the
transportation of workers, failed to provide an original surety
bond, and failed to provide a current hotel inspection where the
workers would stay."  Dkt. No. 651-1 ¶ 44.  Bussey argues in his
Motion that the affidavit should have explained that an NOD is
"standard practice."  Dkt. No. 651 at 7-8 (referring to Dkt. No.
637 at 10-11, 13).

The Magistrate Judge explains that Bussey's argument is
essentially a request for a more favorable characterization of the
NOD process and one that does not materially affect probable cause.
Dkt. No. 1202 at 30.  The Magistrate Judge also explains that
Bussey has not shown that NODs are "standard practice."

In his Objections, Bussey argues that the affidavit
erroneously suggested "that the sending of an NOD is a marker of
fraud."  Dkt. No. 1231 at 15.  Bussey also argues that the
Magistrate Judge errs in stating that Bussey "has not shown that
NODs are standard practice."  Id.

Bussey's Objections concerning the NOD are not convincing.
The affidavit stated that Bussey received an NOD and that he sent
documents back that were responsive to the NOD.  Bussey has not
shown that the affiant was required to characterize NODs as

"standard practice," as such a characterization is not a material fact. As the Magistrate Judge explains, "[I]nnocent behavior frequently will provide the basis for a showing of probable cause because such a showing only requires a probability or substantial chance of criminal activity, not an actual showing of such activity." Dkt. No. 1202 at 30 (quoting Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018)). Bussey's arguments are grounded in his belief that receiving an NOD is not, in itself, an indicator of fraud. Bussey fails to address, however, that even seemingly innocent behavior can contribute to probable cause. Bussey's arguments do not demonstrate any material omissions regarding the NOD.

### D. The Confidential Source's Criminal History

The affidavit relied in part on conversations between Bussey and a Confidential Source ("CS"). The affidavit disclosed the CS's criminal history, but Bussey argues in the Motion that the affiant omitted important details, including facts about the CS's past sexual assault convictions. Dkt. No. 651-1 ¶ 12.

The Magistrate Judge concludes that the affidavit sufficiently described the CS's history of sexual assault convictions, even if it omitted some detail. Dkt. No. 1202 at 31–32. The Magistrate Judge also concludes that, even if additional information about the CS's criminal history could erode the CS's

credibility, the affidavit's factual allegations did not depend on the CS's credibility.  Id. at 32.

Bussey argues in his Objections that a fuller disclosure of the CS's criminal history would have shown a history of "exploitation of the vulnerable[,]" which would impact the CS's credibility.  Dkt. No. 1231 at 17.  Bussey also explains that the CS, in a later meeting with Bussey, plied Bussey with alcohol, knowing that he had a history of chronic alcohol abuse.  Therefore, argues Bussey, the affidavit's factual allegations do depend on the CS's credibility.  Id.

A more complete description of the CS's criminal history would not materially impact probable cause.  As the Magistrate Judge explains, the affidavit disclosed the CS's criminal history in detail, including that the CS had prior convictions for sexual assault.  Bussey argues that additional information would "show a shocking abuse of trust" but fails to explain why the affidavit's description does not already disclose enough information to evaluate the CS's reliability.  Id.

In addition, Bussey's argument that the affidavit depends on the CS's credibility is unavailing.  Bussey argues that the Magistrate Judge "ignores what even the Magistrate noted was troubling conduct," but Bussey fails to explain how the CS's credibility impacts the affidavit's factual allegations.  The allegations in the affidavit about the CS's meetings and calls

with Bussey are based on recordings of those conversations and, therefore, are independently corroborated. Additionally, the affidavit does not depend on any statements Bussey made at the meeting where the CS gave him alcohol. Thus, Bussey has not shown any material omissions related to the CS's criminal history or use of alcohol that would undermine probable cause.

### E.    Meetings and Calls With the CS

The affidavit described several meetings and calls between the CS and Bussey. The CS met with Bussey on April 30, 2019 and August 20, 2019. Dkt. No. 651-1 ¶¶ 122-27. The two also had a telephone call on September 30, 2019. Id. ¶¶ 128-30. Bussey raises challenges related to the Magistrate Judge's determinations about these meetings and the call.

#### 1.    *The April 30, 2019 meeting.*

The affidavit briefly described a meeting between Bussey and the CS on April 30, 2019. Id. ¶ 122. Bussey argues in his Motion that the affiant should have described the meeting in more detail, particularly the facts that the CS, with the knowledge of government agents, actively plied Bussey with alcohol and that Bussey became heavily inebriated at the meeting. Dkt. No. 651 at 12-15.

The Magistrate Judge concludes that none of the additional details about the meeting that Bussey argues should have been included would have materially impacted probable cause. The

Magistrate Judge concludes these details would not have undermined or contradicted the other incriminating statements Bussey made during the meetings and call. Dkt. No. 1202 at 32–34. Additionally, the Magistrate Judge notes that Bussey does not show that the affiant relied on any statements Bussey made at the April 30, 2019 meeting.

Bussey objects, largely focusing on his own detailed description of the April 30, 2019 meeting. Dkt. No. 1231 at 18–21. Bussey also argues that the Magistrate Judge's conclusion "disregards the fact that alcohol is well known to impair the user." Id. at 21. Bussey's argument misses a key aspect of the Magistrate Judge's analysis. The Magistrate Judge acknowledges that the agents' and the CS's conduct was troubling. However, the Magistrate Judge also explains, "The affidavit does not rely on any of Bussey's statements made during the April 30, 2019 meeting [where the CS gave Bussey alcohol], so none of Bussey's statements during that meeting were used to support a finding of probable cause." Dkt. No. 1202 at 34. Bussey's Objection does not address this conclusion.

The Court concurs with the Magistrate Judge's analysis on this point. The affidavit does not rely on any representations that Bussey made during the April 30, 2019 meeting. Therefore, Bussey has not shown that anything he said at the meeting would have materially impacted probable cause if the affidavit had

described the meeting in more detail.  Additionally, nothing that Bussey claims occurred during the meeting would undermine his other incriminating statements, which were included in the affidavit to support probable cause.

Bussey also makes much of the "reckless" conduct of agents and the CS.  Dkt. No. 1231 at 21.  This argument is unavailing because, as the Magistrate Judge notes, the Court need not evaluate recklessness because none of the alleged misrepresentations or omissions materially impacted probable cause.  Dkt. No. 1202 at 34 n.19.

### 2.  *The August 20, 2019 meeting.*

The affidavit described a second meeting between Bussey and the CS, including several statements Bussey made that contributed to probable cause.  The affidavit also stated that Bussey "arranged" the meeting with the CS.  Bussey argues in his Motion that the affidavit either misrepresented or omitted several important aspects of that meeting.  Dkt. No. 651-1 ¶¶ 22-27.  The Magistrate Judge analyzes each of Bussey's challenge and concludes that none of the alleged misrepresentations or omissions materially impacted probable cause.  Dkt. No. 1202 at 34-39.

In his Objections, Bussey contends that the Magistrate Judge's conclusions contradict Bussey's own statements made during the August 20, 2019 meeting.  Dkt. No. 1231 at 21-23.  Bussey also

reiterates his argument from his Motion that he did not "arrange" the August 20, 2019 meeting. Id. at 23.

After a thorough review of the record, the Court concurs with the Magistrate Judge's conclusions about the August 20, 2019 meeting. Bussey's Objections largely restate his arguments from the Motion. As the Magistrate Judge explains in detail, all of the omissions and misrepresentations that Bussey identifies constitute, at most, minor discrepancies. Importantly, none of these omissions or misrepresentations materially impact probable cause. Each of these challenges, therefore, fail.

In addition, Bussey's argument that he did not "arrange" the meeting does not identify a material misrepresentation. It is undisputed that Bussey and the CS talked using TT1 and agreed to meet on August 20, 2019. Who initiated the conversation does not change the fact that Bussey used TT1 to discuss and coordinate (i.e., arrange) the meeting with the CS.

### 3.  *The September 30, 2019 call.*

The affidavit explained that on September 30, 2019, Bussey and the CS spoke on the phone. Dkt. No. 651-1 ¶¶ 128-30. On the call, Bussey and the CS discussed a trip Bussey took to the American consulate in Mexico. In discussing the call, the affiant stated, "Based on this entire investigation and my training and experience, I believe that Bussey used Target Telephone 1 to explain that he went to the consulate office in Mexico to meet

19

with individuals to try to push his fraudulent H-2A petitions through without officials denying visas." Dkt. No. 651-1 ¶ 128a.

In the Motion, Bussey argues that the affiant mischaracterized the call. Bussey argues that the call demonstrates he went to Mexico to "improve the success of his petitions, which were legally submitted." Dkt. No. 651 at 17. Bussey points to a memorandum written by a consular officer who spoke to him at the visit in support. Id. at 18. The memorandum summarized the meeting between the consular officer and Bussey, and Bussey argues it demonstrates the innocent purpose of the trip. Id.

The Magistrate Judge concludes that Bussey failed to identify any misrepresentation or omission related to the September 30, 2019 call (or the trip to Mexico) that would materially impact probable cause. Dkt. No. 1202 at 39-41. Specifically, the Magistrate Judge concludes the addition of a description of the memorandum to the affidavit would not have changed or materially impacted any facts in the affidavit. Id. at 39-40. In addition, the Magistrate Judge observes that Bussey's challenge largely focuses on descriptions of the affiant's subjective beliefs, not material misrepresentations or omissions. Id. at 40-41.

In his Objections, Bussey repeats his argument that the affidavit does not present "a proper reading" of what happened on the September 30, 2019 call. Dkt. No. 1231 at 24. Bussey again

points to the State Department memorandum, ostensibly to show that the purpose for the trip was innocuous. Id. at 24-25. Bussey also characterizes the affiant's statements about the meeting as speculative and contends there was nothing "untoward" about the meeting. Id. at 25. As a final point, Bussey states that the day after the call, the CS met with Bussey again and "got Bussey drunk." Id.

Bussey's arguments are unconvincing. It is undisputed that the affidavit quoted Bussey's own statements from the call. The affidavit stated that Bussey told the CS during the September 30, 2019 call that he (Bussey) recently went to Mexico for the purpose of "getting these people over here . . . because a lot of the people were held up and they were not allowed visas this past year." Dkt. No. 651-1 ¶ 129a. The affidavit also stated that Bussey told the CS he wanted to go to the consulate to "clear [his] name and all that." Id. Thus, the affidavit included Bussey's representations to the CS that he wanted to go to the consulate for a legitimate purpose (i.e., to "clear [his] name"). The State Department memorandum does not change or undermine any statement in the affidavit, particularly Bussey's verbatim statements made during the September 30, 2019 call.

Bussey's challenge to the affiant's description of his subjective beliefs are also unavailing. The affiant described his belief, based on the entire investigation and his training and

experience, that Bussey actually went to Mexico in support of his fraudulent H-2A visa applications.  Id.  As the Magistrate Judge explains, the "opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation."  Dkt. No. 1202 at 40 (quoting United States v. Robinson, 62 F.3d 1415, 1331 n.9 (11th Cir. 1995)).  While Bussey may contend the agent's subjective beliefs were mistaken, that disagreement does not mean it was improper for the agent to include his subjective beliefs or for the reviewing judge to consider the agent's subjective beliefs.

Relatedly, Bussey argues that, because the affiant did not know the details of Bussey's trip, he improperly speculated by concluding the purpose was to "push through fraudulent H-2A petitions."  Dkt. No. 1231 at 25.  However, the affidavit correctly described Bussey's statements to the CS during the September 30, 2019 call, and the affiant expressly pointed to his training and experience as a Homeland Security Investigations Agent to support his beliefs about the purpose of Bussey's Mexico trip.  The affiant explained that he has been an agent since 2009 and he has experience with human trafficking investigations and labor trafficking more specifically.  The agent has specialized training in visa security and fraud and human trafficking.  Dkt. No. 651-1 ¶ 2.  The affiant explained that law enforcement was actively investigating the TCO.  Ultimately, the affiant established in the

affidavit that he is an experienced law enforcement officer, with access to sufficient facts to form an opinion about the true purpose of Bussey's trip to Mexico. Thus, it was proper for the affiant to include a description of his subjective beliefs in the affidavit and for the reviewing judge to consider those beliefs in evaluating probable cause.

Ultimately, the Court concurs with and adopts the Magistrate Judge's conclusion that Bussey fails to identify any misrepresentation or omission related to the September 30, 2019 call (or the trip to Mexico) that would materially impact probable cause.[3]

## III. Probable Cause to Believe That TT1 Was Used in Criminal Activity

In his Objections, Bussey separately contends that the Magistrate Judge did not address one of his arguments about TT1. Dkt. No. 1231 at 26. Specifically, Bussey argues that the Government only obtained his phone number from "labor certification paperwork" and that every phone contact made during the Government's investigation was initiated by the CS, not by Bussey. Id. at 26-27. Bussey argues, therefore, that TT1 was not

---

[3] In this section of his Objections, Bussey also contends the affidavit failed to fully describe an October 1, 2019 meeting between Bussey and the CS where the CS gave Bussey alcohol (the day after the September 30, 2019 call). Dkt. No. 1231 at 25. Bussey fails to identify any material misrepresentation or omission about the October 1, 2019 meeting for the same reason his arguments about the April 2019 call did not. The affidavit did not rely on any October 1, 2019 meeting to establish probable cause, and there is no indication that a description of this meeting in the affidavit would have impacted probable cause.

"used in an illegal operation." Id. at 26(citing United States v. Degaule, 797 F. Supp. 2d 1332, 1354 (N.D. Ga. 2011)).

Bussey's Objection is unconvincing. The Magistrate Judge describes the affidavit's factual allegations about TT1. Dkt. No. 1202 at 4-5, 20-22. The affidavit explained that TT1 was used extensively to contact other Target Subjects. Dkt. No. 651-1 ¶ 131. The affidavit also explained that Bussey had consensual conversations with the CS and the two set up meetings discussing potentially criminal conduct during those conversations. Id. ¶¶ 122-30.

Bussey does not dispute that he consistently used TT1 to contact several Target Subjects, all of whom were suspected of organized criminal activity. Bussey also does not dispute that he used TT1 to talk to the CS and, during those conversations, the two discussed illegal activity and made plans to meet to further discuss labor schemes. At most, Bussey argues that it was the CS, not Bussey, who initiated those conversations. Even accepting Bussey's contention as true, it would not demonstrate that TT1 was not used in an illegal operation. To the contrary, the numerous factual allegations about the use of TT1 in the affidavit support the conclusion that there was probable cause to believe TT1 was used in an illegal operation. The Magistrate Judge thoroughly discusses and considers these allegations. Dkt. No. 1202 at 21-22. Bussey's Objection that the Magistrate Judge never responded

to his argument is, therefore, without merit. Ultimately, the Court concurs with and adopts the Magistrate Judge's conclusion that the affidavit includes undisputed facts supporting probable cause that TT1 was used in an illegal operation.

## CONCLUSION

Accordingly, and after conducting an independent and de novo review of the entire record in this matter, the Court **CONCURS** with the Magistrate Judge's Report and Recommendation, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Bussey's Objections.

**SO ORDERED**, this ___9___ day of May, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA